[No. A049391. First Dist., Div. Two. Feb. 6, 1992.]

EDMOND MIRABITO, Cross-complainant and Respondent, v.
KATHLEEN LICCARDO, as Executrix, etc., Cross-defendant and
Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of sections IIB through IID.

**COUNSEL**

Thoits, Love, Hershberger & McLean, William McLean, Caputo, Liccardo, Rossi, Sturges & McNeil and Robert Sturges for Cross-defendant and Appellant.

Albert K. Martin for Cross-complainant and Respondent.

**OPINION**

**PETERSON, J.**—Kathleen Liccardo, in her capacity as executrix of the will of Leonard J. Liccardo, appeals from a civil judgment entered after a jury verdict awarding damages to respondent Edmond Mirabito. Appellant presents several arguments on appeal, but maintains primarily that the trial court erred when it allowed the jury to consider the Rules of Professional Conduct of the State Bar when reaching its decision. We disagree and affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Edmond Mirabito (hereafter Edmond) operated a shoe shop in San Francisco for over 41 years. An astute investor, Edmond placed the proceeds of his endeavors into a number of successful investments, including income property in San Francisco, raw land in Santa Rosa, and various stocks.

Leonard J. Liccardo (hereafter Leonard) was Edmond's second cousin. Edmond had known Leonard since he was born and had helped him through law school. Edmond attended Leonard's moot court hearings and was proud of his accomplishments. After Leonard completed law school, Edmond employed him as his attorney on numerous occasions, having him draft leases and prepare legal documents.

By 1983, Edmond was ready to retire so he went to Leonard for an estate plan. After viewing a list of Edmond's assets, Leonard commented that Edmond had "done very well." He then tried to interest Edmond in a variety of high technology investments. Edmond was not interested but Leonard persisted, indicating that if Edmond would loan $100,000 for a particular investment Leonard would personally guarantee it. Based on this assurance, Edmond agreed and made a $100,000 loan in September 1983.

Over the following 16 months, Leonard persuaded Edmond to invest over $1.5 million in various enterprises, personally guaranteeing that the money would be returned. In large part, Edmond raised the money by mortgaging his various properties. Even though Leonard was acting as Edmond's attorney at the time, he never advised Edmond to seek independent counsel.

In late 1984, Leonard persuaded Edmond to invest over $700,000 in a movie venture, again personally guaranteeing that the money would be repaid. Leonard never told Edmond he was personally involved in the movie venture and never advised him to seek independent counsel. In addition, Leonard never mentioned that he had filed for personal bankruptcy earlier that year.

The various investments in which Edmond had placed his money were a failure. Leonard was unable to make good on his guarantees; thus, Edmond lost his property in Santa Rosa to a bank foreclosure. In all, Edmond lost nearly $4 million as the result of his investments with Leonard.

In December 1985, a third party filed a breach of contract complaint against Edmond, Leonard, and others as a result of one of the investments in which Edmond had placed his money. Then, in April 1988, Edmond filed a

cross-complaint against Leonard and his wife Kathleen to recover the money he lost in the various investments. After Leonard died in July 1988, Kathleen, in her capacity as executrix of Leonard's will, was substituted as a cross-defendant.

The underlying complaint was settled; and in January 1990, the cross-complaint was tried before a jury in the San Mateo Superior Court. After a 13-day trial, the jury rendered its verdict in favor of Edmond and against the estate, awarding Edmond damages of $2,510,000. The jury also concluded that Leonard's wife, Kathleen, was not liable individually. After an unsuccessful motion for new trial, appellant filed the present appeal.

## II. DISCUSSION

### A. *Rules of Professional Conduct*

Appellant's first claim of error relates to the use of the Rules of Professional Conduct of the State Bar at trial. In order to understand this argument, some background is necessary.

Edmond's cross-complaint against Leonard was based upon several legal theories including breach of contract and various species of fraud. In connection with the fraud claims, Edmond alleged that Leonard had breached his fiduciary duties. This allegation was premised on the attorney/client relationship which existed between Edmond and Leonard. Edmond maintained that, pursuant to former rule 5-101 of the Rules of Professional Conduct of the State Bar (hereafter rules), Leonard had a duty to fully disclose the circumstances surrounding the various investments in which he had placed his money, and should have offered him the opportunity to obtain independent counsel prior to investing.[1]

On the first day of trial, appellant moved *in limine* to bar the introduction of evidence concerning the rules. Essentially, appellant argued the rules only establish disciplinary standards by which attorneys' conduct is measured and are not intended to provide for civil liability. The trial court was unpersuaded

---

[1]Former rule 5-101 provided, "A member of the State Bar shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the member of the State Bar acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner and terms which should have reasonably been understood by the client, (2) the client is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction, and (3) the client consents in writing thereto."

The substance of former rule 5-101 is now contained in rule 3-300.

and allowed Edmond to present testimony from several attorneys, including one who specialized in professional ethics, who stated that prior to entering into a business transaction with a client an attorney is required to fully disclose the circumstances surrounding the proposed investment, and to offer the client the opportunity to seek independent counsel. Subsequently, the trial court approved several jury instructions which were patterned after the rules and permitted them to be read to the jury.

On appeal, appellant challenges this procedure on two broad grounds. First, she maintains the trial court should not have allowed testimony or permitted jury instructions concerning the rules because those rules do not establish an attorney's civil liability. Second, she argues that, even if the rules provide a standard by which an attorney's conduct can be measured in a civil case, the court here should have barred the introduction of evidence about Leonard's compliance with the rules under Evidence Code section 352. Neither of these arguments is persuasive.

Since Edmond's fraud claims were based, in part, upon Leonard's alleged breach of his fiduciary duties, it was incumbent upon Edmond to establish what "duties" Leonard was alleged to have breached. It is well established that an attorney's duties to his client are governed by the rules. (*Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125, 1147 [217 Cal.Rptr. 89].) Those rules, together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his client. (*David Welch Co.* v. *Erskine & Tulley* (1988) 203 Cal.App.3d 884, 890 [250 Cal.Rptr. 339].)

The two cases cited above illustrate how courts and litigants have used the rules to prove an attorney's breach of his duties. In *Day* v. *Rosenthal, supra,* the entertainer Doris Day brought an action against her former attorney for legal malpractice, breach of fiduciary duty, and fraud and obtained a judgment of over $25 million. On appeal, the attorney claimed the judgment had to be reversed because his negligence was not proven through expert testimony. The appellate court rejected this argument by noting that an attorney's duties to his client are conclusively established by the rules, which the trial court was required to judicially notice. The attorney's violation of those rules established his negligence even in the absence of expert testimony. (170 Cal.App.3d at pp. 1146-1149.)

The court in *David Welch Co.* v. *Erskine & Tulley, supra,* made similar use of the rules. In that case, a client obtained a judgment against his former attorneys claiming they had breached their fiduciary duties. On appeal, the attorneys claimed the court erred in finding a breach based upon their

alleged violation of the rules. The appellate court rejected the contention noting that the rules help define an attorney's duties to his client and, thus, could properly be used to measure whether the attorneys had breached their fiduciary duties. (203 Cal.App.3d at pp. 890-892.)

In the present case, as in *Day* and *David Welch*, the rules could be used to help prove whether Leonard had breached his fiduciary duties to Edmond as was alleged in the cross-complaint. The court did not err in permitting testimony regarding those rules or by instructing the jury with them.

Appellant disputes this conclusion on several grounds. First, citing *Noble v. Sears, Roebuck & Co.* (1973) 33 Cal.App.3d 654, 658-659 [109 Cal.Rptr. 269, 73 A.L.R.3d 1164], and *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1333, footnote 5 [231 Cal.Rptr. 355], appellant maintains the rules cannot be used to establish an attorney's civil liability. Neither of these cases is persuasive for the point appellant advances. Both cases merely hold that there is no independent cause of action for the breach of a disciplinary rule. Here, Edmond did not allege Leonard's violation of a rule as a separate cause of action. Rather, Edmond alleged Leonard had breached his fiduciary duties. Leonard's breach of his duties was then measured by his violation of the rules.[2]

Appellant also maintains the rules should not have been provided to the jury in the form of instructions. To support this argument, appellant relies on an obscure comment in a single case, *Sloan v. Stearns* (1955) 137 Cal.App.2d 289, 301 [290 P.2d 382], where, in discussing the lower court's rejection of a proposed jury instruction, the appellate court stated, "[the instruction requested] quotes one of the rules of professional conduct prescribed by the State Bar. Sound though it be, it is a generality which is not appropriate to a jury instruction." The court in *Sloan* expressly declined to set forth the text of the instruction to which it was referring and failed to explain in what manner it was inappropriate. (P. 301, fn. 4.)

---

[2]At oral argument, appellant attempted to buttress her argument by pointing to a recent out-of-state case, *Lazy Seven Coal Sales, Inc. v. Stone & Hinds* (Tenn. 1991) 813 S.W.2d 400. According to appellant, in *Lazy Seven*, the Tennessee Supreme Court held that state's rules of professional responsibility could not be used in a legal malpractice trial to prove an attorney's misconduct. We question appellant's reading of the case. We interpret *Lazy Seven* as holding simply that the violation of a rule of conduct, by itself, does not establish an attorney's malpractice. (P. 405.) The *Lazy Seven* court implicitly approved the use of the rules of professional responsibility at trial when it stated, "the standards stated in the Code are not irrelevant in determining the standard of care in certain actions for malpractice. The Code may provide guidance in ascertaining lawyers' obligations to their clients under various circumstances, and conduct which violates the Code may also constitute a breach of the standard of care due a client." (*Ibid.*)

In any event, we need not definitively interpret Tennessee law on this point. To the extent *Lazy Seven* conflicts with California law, we decline to follow it.

While we have no quarrel with the proposition that a jury instruction based upon a rule is not always proper, we cannot agree, as appellant argues, that an instruction based upon a rule is never proper. Where, as here, the rules provide the standard by which an attorney's breach of his fiduciary duty is measured, an instruction based on the rules is entirely proper.

Appellant's alternate argument against the use of the rules at trial is based on Evidence Code section 352. Appellant argues the court should have excluded all testimony regarding the rules under that section. However, appellant has failed to cite any portion of the record where she raised this argument in the court below. It is true that in her motion *in limine* appellant urged the court to exclude evidence concerning the rules as irrelevant; we can find no place in the record where appellant asked the court to engage in the weighing process contemplated by Evidence Code section 352. ■ A general objection on the ground of relevance is not sufficient to preserve the issue for purposes of appeal. (*People* v. *Smith* (1984) 151 Cal.App.3d 89, 97 [198 Cal.Rptr. 623].)

B.-D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.  DISPOSITION

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.

---

*See footnote, *ante*, page 41.