[No. A129051. First Dist., Div. One. June 17, 2011.]

DESERT OUTDOOR ADVERTISING et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
GERALD M. MURPHY et al., Real Parties in Interest.

COUNSEL

Herbert W. Yanowitz for Petitioners.

No appearance for Respondent.

Horvitz & Levy, David M. Axelrad, David S. Ettinger; Murphy, Pearson, Bradley & Feeney, James A. Murphy and John P. Girarde for Real Parties in Interest.

OPINION

**MARCHIANO, P. J.**—A lawyer represents a client under a fee agreement that does not contain an arbitration clause. As sometimes occurs these days, the lawyer changes firms in the middle of the litigation. The client signs a new engagement and fee agreement that includes an arbitration clause set forth in understandable terms. Is it the client's responsibility to read the fee agreement, or does the scope of the lawyer's fiduciary duty require the lawyer to separately explain the arbitration clause to the client, so that the client's admitted failure to fully read the agreement is "reasonable" and a basis to avoid arbitration? Under the circumstances of this case, involving clients who are sophisticated businesspersons, we conclude there was no duty to separately explain the arbitration clause.

Petitioners Desert Outdoor Advertising (DOA), a Nevada corporation, and Paul Jurich are the plaintiffs in a professional negligence action against real parties in interest Gerald M. Murphy and his law firm, Luce, Forward, Hamilton and Scripps, LLP (Luce Forward). Real parties in interest filed a petition to compel arbitration, which the trial court granted. Petitioners seek a writ of mandate to set aside the order compelling arbitration. For the reasons set forth below, we deny writ relief.

## I. FACTS

The material facts are set forth in declarations and are essentially undisputed, except where noted.[1]

---

[1] Petitioners claim we must exercise de novo review of the facts because they are contained solely in declarations. But our standard of review is substantial evidence, with due deference to the trial court's resolution of factual conflicts, regardless of whether the evidence is oral or documentary. (See, e.g., *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 & fn. 3 [76 Cal.Rptr.3d 250, 182 P.3d 579]; *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339]; *Griffith Co. v. San Diego Col. for Women* (1955) 45 Cal.2d 501, 507–508

In late 2002 or early 2003, Bahram Farahi, DOA's president, retained Murphy regarding a dispute with the City of Oakland over the installation of a billboard. At the time, Murphy was a partner with the law firm of Jacobs, Spotswood, Casper & Murphy, LLP (Jacobs Spotswood).

On May 10, 2004, Farahi and petitioner Jurich signed a written fee agreement with Murphy and Jacobs Spotswood concerning an action brought by the City of Oakland against DOA and Jurich in Alameda County Superior Court.[2] The fee agreement was three pages long and did not include an arbitration clause. Murphy proceeded to represent petitioners in the Alameda County action, as well as a related federal action filed by petitioners against the City of Oakland in the United States District Court for the Northern District of California.

In January 2006, Murphy wrote Farahi and Jurich, told them he was moving his law practice to Luce Forward, and enclosed a new engagement and fee agreement. The new engagement and fee agreement, dated January 23, 2006, was seven pages long and contained an arbitration clause. The clause, set forth in a separate paragraph on page 4, at the conclusion of a lengthy section regarding statements for fees and costs, provided: "In the event of any dispute over the amounts due, any collection action by us, or any other dispute of any kind whatsoever between us, including without limitation, dissatisfaction with the services provided to you or your belief that the firm has engaged in malpractice, you hereby agree to submit to binding arbitration in San Francisco, California pursuant to the rules of and before JAMS, or, in the event that the law requires otherwise as to fee disputes, before and in accordance with the rules of the Bar Association of San Francisco. You further agree to pay our costs of collection, including actual attorneys' fees and costs, including expert fees, involved in obtaining amounts due us. You are aware and acknowledge that this agreement for binding arbitration constitutes a waiver on your part of any right to initiate a court proceeding with respect to any dispute in connection with this agreement or the services provided hereunder and that, as a part of such waiver, you are waiving your right to a trial by jury."

On page 5 of the fee agreement, at the conclusion of the section entitled "Conflict Waiver," the agreement stated: "You have the right to seek the independent advice of your own counsel prior to executing this document and I recommend that you do so."

---

[289 P.2d 476]; *Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923 [20 Cal.Rptr.2d 834].) Petitioners rely on Court of Appeal decisions inconsistent with the controlling Supreme Court authority.

[2] Apparently, Jurich was only involved in the litigation because he rented the space for the billboard to DOA.

Murphy also sent the new agreement to Jeff Herson, DOA's CEO, and Alan Herson, an attorney who represented DOA in the federal litigation.[3]

Jurich signed the new agreement on January 31, 2006. Farahi signed it on February 3, 2006.

The state and federal litigation was resolved adversely to petitioners. In the state action, the City of Oakland obtained an injunction requiring petitioners to remove the billboard because it violated the Oakland Municipal Code, and also obtained a ruling that petitioners had engaged in unlawful business practices. For the latter, the trial court awarded the City of Oakland statutory penalties, disgorgement of profits, and attorneys' fees. We upheld these rulings. (*City of Oakland v. Jurich* (Nov. 25, 2008, A117870 & A120152) [nonpub. opn.].) In the federal litigation, in which petitioners alleged the applicable portion of the Oakland Municipal Code was unconstitutional, petitioners lost both in the trial court and on appeal. (See *Desert Outdoor Advertising v. City of Oakland* (9th Cir. 2007) 506 F.3d 798.)

On March 5, 2010, petitioners filed a complaint against Murphy and Luce Forward alleging professional negligence and breach of fiduciary duties.[4]

On April 26, 2010, invoking the arbitration clause of the Luce Forward fee agreement, Murphy and Luce Forward petitioned to compel arbitration.

Petitioners opposed the petition. They argued the arbitration clause was "buried in the last paragraph" of the five-paragraph section of the fee agreement entitled "Statements." They also argued Murphy had committed constructive fraud by breaching fiduciary duties toward petitioners by not separately disclosing there was an arbitration clause in the Luce Forward fee agreement, when there had not been one in the Jacobs Spotswood fee agreement.

Farahi submitted a declaration in support of the opposition in which he stated he informed Murphy of various health problems in 2005, including mantle cell lymphoma, thyroid cancer, and depression. In "January 2006" he told Murphy he was seeing a psychiatrist. Farahi declared he "did not read the letter fee agreement dated January 23, 2006 . . . carefully before I signed it." Despite the fact the agreement was twice as long as the first one, Farahi declared: "When I signed the letter fee agreement . . . I thought that it was

---

[3] Petitioners objected to Murphy's supplemental declaration identifying Jeff Herson as the CEO. The trial court correctly overruled the objection.

Petitioners' request for judicial notice is denied.

[4] Petitioners also sued Jacobs Spotswood, which has not been served with the complaint and is not a party to this writ proceeding.

the same agreement that I had signed before, but that Murphy merely had changed law firms." Farahi stated he wanted to continue having Murphy as his lawyer, and only signed the agreement with Luce Forward because that was where Murphy was working.

Farahi further stated "Murphy did not tell me that the new fee agreement had any terms that differed from the old one." Finally, Farahi declared: "I did not realize that there was a provision for arbitration of any malpractice claims that [DOA] might have until [DOA] had begun to consider the malpractice claims against the Defendants. Because there had been no arbitration provision in the earlier agreement with Murphy while he was with Jacobs, Spotswood, I would have objected to a change of terms in the 2006 agreement that would have prevented a jury trial."

Jurich also submitted a declaration in which he stated he was only named as a defendant in the state action because he leased the billboard space to DOA and "personally . . . had little to do with the case." He stated that when Murphy moved to Luce Forward he did not want to change lawyers. "When I received the new fee agreement from Murphy, I thought that the only thing involved was the change in firms."

Like Farahi, Jurich "did not read the letter agreement dated January 23, 2006, carefully before I signed it . . . ." Jurich said he did not carefully read the agreement because he "had no idea that there were any changes in the legal arrangement with Murphy." Jurich declared Murphy did not tell him "that there was a change in the terms of his representing me, in the sense that any disputes between us had to be handled in arbitration." However, despite his claim that he did not carefully read the fee agreement, Jurich made a correction on page 5—the page *after* the arbitration clause. Jurich corrected the Oakland street address of the billboard location, changing "3317 E. 8th Street" to "3350 E. 9th Street."

Alan Herson submitted a declaration in which he stated he did not read the new fee agreement because it "contained too many pages" and he had no reason to believe it meant anything more than Murphy's changing law firms. Jeff Herson, the CEO of DOA, did not submit a declaration in opposition to the petition to compel arbitration.

Murphy submitted a supplemental declaration in which he stated he never told Farahi or Jurich the new Luce Forward fee agreement was identical to the Jacobs Spotswood fee agreement, and noted the new agreement encouraged Farahi and Jurich to seek the advice of independent counsel.

The trial court granted the petition to compel arbitration, ruling that "California law expresses a clear public policy in favor of the enforceability of arbitration provisions within contracts, including attorney retainer agreements with clients."

Petitioners sought a writ of mandate to set aside the trial court's ruling. On August 25, 2010, we summarily denied the petition. On October 29, 2010, the California Supreme Court granted review and transferred the matter back to this court with directions to vacate our order denying the petition and to issue an order to show cause. We complied. Real parties in interest filed a return to the order to show cause and we have heard oral argument.

## II. DISCUSSION

The Supreme Court's transfer order does not mean petitioners are correct on the merits or that a writ should issue, but rather we should reconsider the matter and file an opinion. We may reach the same result as we did upon our first consideration of the case, and we do so now. (See *Gressett v. Superior Court* (2010) 185 Cal.App.4th 114, 117, fn. 2 [109 Cal.Rptr.3d 919]; *Turner v. Superior Court* (1998) 67 Cal.App.4th 1432, 1434, fn. 1 [80 Cal.Rptr.2d 84].) On the facts of this case, petitioners cannot avoid arbitration due to their asserted failure to carefully read the new fee agreement.

■ "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) Arbitration has become a favored method of expeditiously resolving disputes, to the relief of overburdened civil courts. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706–707 [131 Cal.Rptr. 882, 552 P.2d 1178].) As a result, courts will indulge every intendment to give effect to arbitration clauses. (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

■ A cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement. (See, e.g., *Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1109 [63 Cal.Rptr.2d 261] (*Powers*); *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318 [231 Cal.Rptr. 315].) "To make out a claim of fraud in the execution," parties seeking to avoid arbitration "must show their apparent assent to the contracts—their signatures on the client agreements—is negated by fraud so fundamental that they were deceived as to the basic character of the documents they signed and had no reasonable opportunity to learn the truth." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 425 [58 Cal.Rptr.2d 875,

926 P.2d 1061] (*Rosenthal*).) Accordingly, "[a] necessary element of the defense of fraud in the execution is *reasonable reliance*," and "[g]enerally, it is *not reasonable* to fail to read a contract; this is true even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract." (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 958, 959 [85 Cal.Rptr.3d 817] (*Brown*).)

Thus, under a substantial evidence standard of review, petitioners are bound by the Luce Forward fee agreement because they signed it, regardless of whether they failed to carefully read it—or, in Jurich's case, read it carefully enough to make a minor correction on a page after the page containing the arbitration clause. Petitioners claim an exception from this principle by attempting to fashion a claim of constructive fraud based on a supposed violation by Murphy of his fiduciary duties by failing to personally explain the new agreement.

Petitioners advance their claim of constructive fraud on a theoretical framework set forth in *Brown, supra,* 168 Cal.App.4th at pages 958–959. In essence, petitioners claim the scope of Murphy's fiduciary duty included separately informing them of the arbitration clause in the new fee agreement. This could theoretically excuse petitioners from their failure to carefully read the agreement. (*Brown, supra,* at p. 959.) However, this argument presupposes a duty which we do not find in this case for the following reasons.

"The scope of a fiduciary's obligations depends on the specific facts of the case. [Citation.] Such factors may include, for example, the relative sophistication and experience of the vulnerable party. [Citation.]" (*Brown, supra,* 168 Cal.App.4th at p. 961 [scope of bank's fiduciary duty]; accord, *Rosenthal, supra,* 14 Cal.4th at p. 425 [scope of securities brokers' fiduciary duty "varies with the facts of the relationship"]; see also *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1032 [117 Cal.Rptr.2d 685] ["It is well established that an attorney's duties to his client are governed by the Rules of Professional Conduct, and that those rules, together with statutes and general principles relating to other fiduciary relationships, 'help define the duty component of the fiduciary duty which an attorney owes to his client.' (*Mirabito v. Liccardo* (1992) 4 Cal.App.4th 41, 45 [5 Cal.Rptr.2d 571].)"].)

Petitioners claim Murphy had a duty to separately disclose and explain the arbitration clause in the Luce Forward agreement based primarily on these facts: he knew Farahi was in ill health; there was no arbitration clause in the Jacobs Spotswood fee agreement; and the Luce Forward agreement introduced arbitration into the relationship between the parties for the first time. However, under the circumstances of this case, we do not agree that Murphy

had a duty to explain the arbitration clause that was clearly set forth in the fee agreement signed by the clients.

■ Murphy's clients were the president of a corporation well known for its prominence in the billboard industry, as well as another businessman. Both clients were sent the new fee agreement, urged to read it, and encouraged to seek the advice of their own counsel before executing it. It strains credulity that Farahi and Jurich believed the new agreement was the same as the first one—it was twice as long. Farahi's health issues aside, the agreement involved significant, ongoing litigation at the heart of Farahi's business. Jurich read the new agreement carefully enough to make a correction. In addition, the CEO of DOA and one of its attorneys also received the agreement. These were not unsophisticated people unschooled in the ways of litigation. Nor was the agreement a contract of adhesion that was forced on them. The cover letter described a *new* retainer agreement with Luce Forward and explained that if the clients did not want to sign it Murphy would prepare a substitution to allow DOA's corporate counsel to continue representing DOA.

There is ample evidence supporting the trial court's implicit determination that, in this case, the scope of Murphy's fiduciary duties did not include separately explaining the Luce Forward retainer agreement to DOA and Jurich. Murphy's cover letter made clear the Luce Forward retainer agreement was new. And there was simply no mistaking from the letter that it needed to be reviewed and approved. The cover letter even anticipated that petitioners might be unwilling to sign the new agreement, and stated arrangements would be made for new counsel if that was the case. The cover letter also showed copies of the new retainer agreement were sent to DOA's CEO, who was Murphy's primary contact during the litigation, as well as its corporate and litigation counsel. The signatories, Farahi and Jurich were knowledgeable businesspersons, and the new, seven-page Luce Forward retainer agreement was obviously substantially different from the old, three-page Jacobs Spotswood agreement. While the arbitration provision was not preceded by a separate heading and not in a different font, it was set forth in a separate paragraph (and all paragraphs were set off by double, double spacing) and was in the same easily read font as the rest of the agreement. In short, the arbitration provision was readily discernable and clear. There is no assertion of any effort to conceal the arbitration clause or any affirmative misrepresentations about it. Thus, even taking into account Farahi's ill health, the circumstances here do not come *close* to those in *Rosenthal*, wherein *some* of the plaintiffs made a showing sufficient to raise a triable issue that

their failure to read the arbitration agreement was reasonable and, as to them, the scope of the defendants' fiduciary duty was broader.[5] (*Rosenthal, supra*, 14 Cal.4th at pp. 427–430.)

Petitioners' expert, Jerome Fishkin, offered the opinion Murphy was required to separately (1) "explain that the arbitration section constituted a significant change in the new attorney client fee agreement as contrasted to the previous one" and (2) "explain the significant differences to the clients." Fishkin indicated he "agreed" with the "rationale" of California Compendium on Professional Responsibility, part IIA, State Bar Formal Opinion No. 1989-116 (State Bar opinion) and a comment in Knight et al., California Practice Guide: Alternative Dispute Resolution (The Rutter Group 2009) ¶ 5:92.5, page 5-67 (rev. # 1, 2009) on *Powers, supra*, 54 Cal.App.4th 1102, authorities petitioners cite in support of their writ petition.

However, neither the State Bar opinion nor *Powers*, which discusses the opinion, provide any support for the assertion that the scope of Murphy's fiduciary duties was so broad it excused petitioners from reading the Luce Forward retainer agreement, making their failure to read the agreement "reasonable," a proposition essential to their claim of fraud in the execution. To the contrary, the State Bar opinion and *Powers* are at odds with such an assertion.

The State Bar opinion states in pertinent part: "[W]here an arbitration provision is negotiated between an attorney and an *existing* client, ethical considerations aside from any legal considerations require that the attorney fully disclose the terms and consequences of the provision and that the client knowingly consent to it. It is the Committee's opinion that compliance with the provisions set forth in California Code of Civil Procedure section 1295 . . . would satisfy the ethical concerns present when an arbitration provision is negotiated with an existing client." (State Bar opn., *supra*, p. 4, citation & underscoring omitted, italics added.) The State Bar opinion also states it "is advisory only" and "not binding upon the courts, the State Bar of California, its Board of Governors, any persons or tribunals charged with regulatory responsibilities, or any member of the State Bar." (*Ibid.*)

---

[5] For example, one of these plaintiffs was an 81-year-old Italian immigrant, who claimed she spoke only a few words of English and could not read the language at all, and that an employee had purportedly read the documents to her, but had made no mention of an arbitration provision. (*Rosenthal, supra*, 14 Cal.4th at p. 427.) Another was legally blind and claimed to have told an employee he would need to explain the documentation to her and that he not only made no mention of the arbitration provision, but affirmatively misrepresented the nature of the document. (*Id.* at pp. 428–429.) Yet another was an 80-year-old woman with Alzheimer's, who had severe memory loss, diminished understanding and was incapable of understanding monetary transactions. Nevertheless, and despite being told the woman should not be allowed to approve asset transfers, an employee procured her signature on account and transfer documentation containing an arbitration provision. (*Id.* at p. 430.)

*Powers*, thus, observed: "The formal [State Bar] opinion did suggest . . . that in order to avoid the possibility that an arbitration provision might be found unenforceable, an attorney would be advised to comply with the provisions of Code of Civil Procedure section 1295. [Citation.] [¶] Code of Civil Procedure section 1295 requires that contracts for medical services containing malpractice arbitration provisions state in at least 10-point bold red type that by signing the agreement the patient (1) agrees to have any medical malpractice issue decided by a neutral arbitrator and (2) specifically waives the right to a jury or court trial."[6] (*Powers, supra*, 54 Cal.App.4th at p. 1114.)

Code of Civil Procedure section 1295 addresses the *form and content* of a medical malpractice arbitration provision. The statute does not impose any other requirement, i.e., that a health care provider separately "explain" the provision. Section 1295 therefore presumes the agreements to which it applies *will be read* and that the form and content of the provision, itself, will adequately inform the signatory. Thus, the State Bar opinion—which suggests compliance with section 1295 "would satisfy the ethical concerns present when an arbitration provision is negotiated with an existing client" (State Bar opn., *supra*, at p. 4)—also presumes the client *will read* the retainer agreement. The State Bar opinion therefore does *not* support the notion that a client need not read a new retainer agreement because an attorney's fiduciary duty inherently requires additional, direct communication "explaining" it. Nor does *Powers*, which simply cites the State Bar opinion and suggests that compliance with section 1295's form and content might be helpful—which, again, presumes the client will read the retainer agreement.[7] (*Powers, supra*, 54 Cal.App.4th at p. 1114.)

Accordingly, petitioners' concession at oral argument that compliance with Code of Civil Procedure section 1295 would have satisfied Murphy's ethical obligations in this case is inconsistent with their insistence that they did not need to read the Luce Forward retainer agreement because the scope of

---

[6] In *Powers* both the initial fee agreement and the subsequent one with the attorney's new law firm contained arbitration clauses. (*Powers, supra*, 54 Cal.App.4th at pp. 1106–1107.) The court upheld the law firm's petition to compel arbitration, concluding there was no obligation to separately explain the arbitration provision to the clients and the clients' failure to carefully read the new agreement was no defense to enforcement of the provision. (*Id.* at p. 1109.)

[7] The comment on *Powers* in The Rutter Group Alternative Dispute Resolution treatise states: "In *Powers*, the arbitration provision appeared *both* in the original retainer agreement and in an amendment negotiated during representation. The result could be different where the agreement with an existing client *injects arbitration for the first time*. In such a case, the attorney seemingly would owe a duty to disclose whatever information is necessary to enable the existing client to exercise informed consent." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, *supra*, ¶ 5:92.5, p. 5-67.) This generally cautionary comment does not say an attorney must separately explain a new retainer agreement that includes an arbitration provision. Nor, as discussed above, does *Powers*.

Murphy's fiduciary duty required him to separately explain it to them. The same is true for their reference to Code of Civil Procedure section 1298, which imposes form and content requirements for arbitration provisions in real estate contracts. Again, this statute assumes the contract will be read and the reader will see and understand the arbitration provision by virtue of its form and content. It is also true for petitioners' reference to the Fee Agreement Forms Manual (Cont.Ed.Bar 2d ed. 2010) Fee Agreement—Sample Provisions and Commentary section 1.48, page 76, which states: "Depending on factors such as the sophistication of the client, counsel may want to include space for the client to initial the paragraph to indicate that he or she understands that by agreeing to mandatory arbitration, the client gives up the right to trial by jury . . . ." The client can only initial what he or she has read.

Thus, petitioners' entreaty to this court to judicially mandate form and content requirements for arbitration provisions in attorney retainer agreements, like those imposed by statute for arbitration provisions in medical services and real estate agreements, runs counter to their fraud in the execution argument. Their claim of fraud in the execution is based on their *not reading* the Luce Forward retainer agreement and asserted entitlement to a separate explanation by Murphy.

We likewise decline petitioners' invitation to impose a requirement that arbitration provisions in attorney-client fee contracts be presented in a distinctive type, after the fashion of Code of Civil Procedure section 1295 and other statutes. Whether to expand section 1295 to attorney-client relationships is better left to the Legislature and the California State Bar Association to promulgate appropriate rules of conduct after public comment and not by judicial rulemaking.

We also do not agree with petitioners' argument that the arbitration clause cannot apply to alleged malpractice before Murphy moved to Luce Forward. The arbitration clause is broad and specific, applying to "any . . . dispute of any kind whatsoever between us." There is no temporal limitation. It includes any dispute concerning "dissatisfaction with the services provided to you." Petitioners knew the agreement pertained to their relationship with Murphy and to the ongoing litigation as to which Murphy was representing them. Murphy also signed the agreement and was the attorney responsible for the continuing representation.[8]

---

[8] In light of the disposition, we need not address real parties in interest's argument that the Federal Arbitration Act mandates arbitration under the circumstances of this case.

## III. DISPOSITION

The order to show cause is discharged. The petition for writ of mandate is denied.

Dondero, J., and Banke, J., concurred.

A petition for a rehearing was denied July 15, 2011, and petitioners' petition for review by the Supreme Court was denied September 28, 2011, S195113.