KIN, J.**
INTRODUCTION
Plaintiff and appellant Broadway Victoria, LLC (plaintiff) sued its former attorneys, Norminton, Wiita, & Fuster, Thomas Norminton, and Thomas Norminton, PC (defendants) for legal malpractice and breach of fiduciary duty arising from defendants' representation of plaintiff in an earlier breach of contract action. On appeal from a judgment in favor of defendants, plaintiff contends that the trial court erred when it granted defendants' nonsuit motions on one of plaintiff's malpractice claims and its breach of fiduciary duty claim. Plaintiff also contends that the trial court abused its discretion in denying plaintiff's motion in limine to exclude evidence of alleged prior fraud by failing to weigh the prejudicial effect of that evidence against its probative value, as required *416 under Evidence Code section 352 (section 352 ).
In the published portion of this opinion, we affirm the grant of nonsuit on plaintiff's breach of fiduciary claim because plaintiff did not adduce any evidence in support of that claim beyond the evidence offered in support of its malpractice claim for professional negligence. We also affirm the judgment in all other respects.
BACKGROUND[1]
I. The Underlying Breach of Contract Action
Because plaintiff's malpractice and breach of fiduciary duty claims arise from defendants' representation of plaintiff in an underlying suit against a third-party for breach of contract, we first discuss the events giving rise to the breach of contract claim and the results of that lawsuit.
A. The Lease and Right of First Refusal
Plaintiff, a limited liability company in the business of owning and leasing commercial real estate, was owned by Anita Lorber (Lorber) and her husband.[2] Lorber and her husband also owned a textile manufacturing business, Lorber Industries of California, Inc. (Lorber Industries).
In 1996, Lorber Industries leased a parcel of industrial land (the lease) in Carson (the property) from Elixir Industries (Elixir). The lease for the property provided, inter alia, that Lorber Industries had a right of first refusal, i.e., if, during the 20-year term of the lease, Elixir received an offer to buy the property, Elixir was required to provide Lorber Industries 10-days written notice of the offer, which Lorber Industries then had the right to match. The lease also included an option to purchase the property at the end of the lease and an attorney fees provision entitling the prevailing party in any lease dispute to recover its attorney fees.
After Lorber Industries entered into the lease, plaintiff constructed a 44,000 square foot industrial building on the property. Plaintiff spent between $1.7 and $2 million to construct the building.
In 2004, Elixir sold the property to Sahm Broadway Property, LLC (Sahm). According to Lorber, Elixir never provided Lorber Industries with written or oral notice that Elixir was selling the property to Sahm.[3]
B. Lorber Industries' Bankruptcy
In February 2006, Lorber Industries filed a voluntary petition under Chapter 11 of the Bankruptcy Code. In June 2006, Lorber Industries filed a motion in the bankruptcy court seeking an order authorizing it, as debtor-in-possession, to assume and assign the lease to Sahm or the highest bidder. Plaintiff, represented by the law firm of Buchalter Nemer (Buchalter), made the highest bid for the lease assignment. In August 2006, the bankruptcy court granted Lorber Industries' motion and entered a stipulated order authorizing Lorber Industries to assume the lease and assign it to plaintiff. The order provided that plaintiff was assigned the *417 lease for the following consideration: a credit bid of $800,000, based on the settlement of a $6.5 million secured claim against the bankruptcy estate filed by Lorber; an $800,000 guaranty by Lorber; a $250,000 payment; and a release between plaintiff, Lorber, and other entities, on the one hand, and Lorber Industries, the creditors' committee, and the bankruptcy estate, on the other. The stipulated order further provided that the bankruptcy court retained jurisdiction to determine "all matters" arising from the implementation of that order.
C. Plaintiff Sues Elixir in State Court
According to Lorber, in September 2008, she first learned through her real estate broker that Elixir had sold the property to Sahm. In October 2008, defendants, through attorney Thomas Norminton (Norminton), agreed to represent plaintiff concerning its claim against Elixir for selling the property without providing plaintiff an opportunity to exercise its right of first refusal. There was no written retainer agreement governing that representation.
In late October 2008, in the Superior Court of Los Angeles County, defendants filed on behalf of plaintiff a complaint against Elixir, alleging breach of contract (Elixir action). Plaintiff alleged that it had purchased all of Lorber Industries' rights under the lease, including Lorber Industries' cause of action against Elixir for breach of the right of first refusal provision. According to plaintiff, Elixir breached the right of first refusal provision when it sold the property to Sahm without providing Lorber Industries with notice of the sale. In January 2009, Elixir filed an amended answer that asserted an affirmative defense alleging that plaintiff lacked standing to bring the suit.
In April 2009, Elixir filed a motion for judgment on the pleadings on the ground that plaintiff did not have standing to sue for breach of the right of first refusal provision. According to Elixir, plaintiff lacked standing "because such standing reside[d] with the bankruptcy trustee and/or debtor-in-possession." Defendants opposed the motion on plaintiff's behalf, arguing that the assignment of the lease to plaintiff "passed" the cause of action against Elixir to plaintiff. In June 2009, the trial court denied the motion for judgment on the pleadings. The trial court also denied Elixir's subsequent motions to amend its discovery response that admitted Elixir had no facts to support its affirmative defense based on lack of standing.
In January 2010, Elixir filed a motion for summary judgment, again asserting that the assignment of the lease to plaintiff did not include the cause of action against Elixir for breach of the right of first refusal provision. Plaintiff opposed the motion, maintaining that the cause of action transferred to plaintiff as part of the lease assignment.
In May 2010, the trial court granted Elixir's summary judgment motion, concluding that neither the motion to approve assignment of the lease nor the stipulated bankruptcy court order approving the assignment transferred the cause of action against Elixir as part of the lease assignment to plaintiff. In August 2011, the Court of Appeal affirmed the trial court's order granting Elixir's summary judgment motion and, in November 2011, the Supreme Court denied plaintiff's petition for review.
In connection with the Elixir action, plaintiff ultimately paid defendants approximately $420,000 in attorney fees and costs for services rendered. In addition, plaintiff paid Elixir $325,000 to settle Elixir's claim for attorney fees as the prevailing *418 party pursuant to the lease's attorney fees provision.
II. The Instant Malpractice Suit
In November 2012, plaintiff sued defendants for legal malpractice and breach of fiduciary duty in connection with the Elixir action. In June 2013, plaintiff filed the operative first amended complaint asserting the same causes of action.
Plaintiff's malpractice claim included the following two theories of legal malpractice that are relevant to this appeal: (1) defendants' failure to advise plaintiff of a potential claim it had against Buchalter for purported malpractice in the bankruptcy case over Buchalter's handling of the right to sue Elixir in connection with the assignment of the lease to plaintiff; and (2) defendants' failure to seek in the bankruptcy court clarification of whether the cause of action against Elixir was included in the lease assignment instead of litigating the issue in the Elixir action. The breach of fiduciary duty claim was based on the exact same conduct and acts alleged as the basis for the malpractice claim.
The matter proceeded to jury trial in April 2015.[4] Following the presentation of plaintiff's case-in-chief, defendants filed motions for nonsuit on the breach of fiduciary duty claim and on that part of the legal malpractice claim based on the alleged failure to advise plaintiff about a potential malpractice claim against Buchalter. Following argument on the nonsuit motions, the trial court ruled that defendants did not have a duty to advise plaintiff about a potential malpractice claim against Buchalter and that, in any event, defendants advised plaintiff to consult a legal malpractice attorney about such a claim. The trial court also granted the nonsuit motion on the breach of fiduciary duty claim.
Following the completion of trial on plaintiff's remaining malpractice claim that defendants negligently failed to seek clarification of plaintiff's rights in the bankruptcy court, the jury returned a special verdict finding that defendants did not breach any duty of care owed to plaintiff in representing plaintiff on its claims against Elixir for breach of the lease. The trial court entered judgment on the verdict, and plaintiff filed a timely notice of appeal.
DISCUSSION
I. Defendants' Motions for Nonsuit
"A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. (Campbell v. General Motors Corp . (1982) 32 Cal.3d 112, 117-118 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].) 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, ... indulging every legitimate inference which may be drawn from the evidence in [the] plaintiff['s] favor." ' (Id ., at p. 118 [184 Cal.Rptr. 891, 649 P.2d 224].) A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be substantial evidence to create the necessary conflict.' (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 410, p. 413, italics in original.) [¶] In reviewing a grant of nonsuit, *419 we are 'guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff.' (Carson v. Facilities Development Co . (1984) 36 Cal.3d 830, 839 [206 Cal.Rptr. 136, 686 P.2d 656].) We will not sustain the judgment ' "unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law." ' (Ibid ., quoting Mason v. Peaslee (1959) 173 Cal.App.2d 587, 588 [343 P.2d 805].)" (Nally v. Grace Community Church (1988) 47 Cal.3d 278, 291, 253 Cal.Rptr. 97, 763 P.2d 948.)
We review the grant of a nonsuit de novo. (Legendary Investors Group No. 1, LLC v. Niemann (2014) 224 Cal.App.4th 1407, 1412, 169 Cal.Rptr.3d 787.)
A. Nonsuit on Malpractice Claim***
B. Nonsuit on Fiduciary Duty Claim
Plaintiff contends the trial court erred when it granted the nonsuit motion on its breach of fiduciary duty claim. That claim was premised on plaintiff's theory that, in order to generate greater attorneys fees by continuing to litigate the issue of standing in state court, defendants did not inform plaintiff of the potentially faster and cheaper option of seeking in the bankruptcy court clarification of whether the assignment of the lease to plaintiff included the right to bring the breach of contract action against Elixir. We conclude that nonsuit was properly granted on this claim.
1. Breach of Fiduciary Duty
"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. (Pierce v. Lyman (1991) 1 Cal.App.4th 1093, 1101 [3 Cal.Rptr.2d 236].)" (Stanley v. Richmond (1995) 35 Cal.App.4th 1070, 1086, 41 Cal.Rptr.2d 768.)
"The scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his [or her] client.' (Mirabito v . Liccardo (1992) 4 Cal.App.4th 41, 45 [5 Cal.Rptr.2d 571] ; David Welch Co. v . Erskine & Tulley (1988) 203 Cal.App.3d 884, 890 [250 Cal.Rptr. 339].) Whether an attorney has breached a fiduciary duty to his or her client is generally a question of fact. (David Welch Co. v . Erskine & Tulley , supra , 203 Cal.App.3d at p. 890 [250 Cal.Rptr. 339].) Expert testimony is not required (id . at pp. 892-893 [250 Cal.Rptr. 339] ), but is admissible to establish the duty and breach elements of a cause of action for breach of fiduciary duty where the attorney conduct is a matter beyond common knowledge (id . at p. 893 [250 Cal.Rptr. 339] ; Mirabito v . Liccardo , supra , 4 Cal.App.4th at pp. 45-46 [5 Cal.Rptr.2d 571] ; see also Day v . Rosenthal (1985) 170 Cal.App.3d 1125, 1146-1147 [217 Cal.Rptr. 89] )." (Stanley v. Richmond, supra, 35 Cal.App.4th at p. 1086, 41 Cal.Rptr.2d 768.)
A breach of fiduciary duty is a tort claim entirely distinct from a malpractice claim based on professional negligence. (Barbara A. v. John G. (1983) 145 Cal.App.3d 369, 382-383, 193 Cal.Rptr. 422 ; cf. Budd v . Nixen (1971) 6 Cal.3d 195, 200, 98 Cal.Rptr. 849, 491 P.2d 433 [elements of cause of action for professional negligence].)
*420 Beyond mere allegations of professional negligence, a cause of action for breach of fiduciary duty requires some further violation of the obligation of trust, confidence, and/or loyalty to the client. (2 Mallen & Smith, Legal Malpractice (2017) § 15.3, pp. 660-661 ["[F]iduciary breach allegations that constitute negligence, which do not implicate a duty of confidentiality or loyalty, and are merely duplicative of a negligence cause of action, do not support a cause of action for fiduciary breach"].)
It appears that no California court has explicitly held that a breach of fiduciary duty claim cannot merely duplicate a claim for professional negligence. (See Buehler v. Sbardellati (1995) 34 Cal.App.4th 1527, 1544 fn. 9, 41 Cal.Rptr.2d 104 [noting "there is authority for the view the breach of fiduciary duty theory is separate from the professional negligence theory" but "leav[ing] any resolution of this separate cause of action question to another case"].) In other jurisdictions, however, there appears to be universal agreement that a breach of fiduciary claim cannot stand if it is merely based on duplicative allegations of professional negligence by the attorney. (See, e.g., Pippen v. Pedersen and Houpt (2013) --- Ill.App.3d ----, 369 Ill.Dec. 384, 986 N.E.2d 697, 705 [finding breach of fiduciary duty claim duplicative where "plaintiff's negligence and breach of fiduciary duty claims share the same operative facts and injuries ... and those injuries were actually caused by defendant's allegedly negligent acts"]; Cosmetics Plus Group, Ltd. v. Traub (2013) 105 A.D.3d 134, 143, 960 N.Y.S.2d 388 ["[W]e find that the cause of action for breach of fiduciary duty was properly dismissed as duplicative of the legal malpractice claim. It arose out of the same facts as the legal malpractice claim ..."]; Crist v. Loyacono (Miss. 2011) 65 So.3d 837, 842-843 ["The law recognizes a clear distinction between allegations of legal malpractice based on negligence (sometimes called a breach of the standard of care) and those based on breach of fiduciary duty (sometimes called a breach of the standard of conduct)"]; Illinois National Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A. (Ohio Ct.App. Dec. 2, 2010, No. 10AP-290), 2010 WL 4926572 at *4, 2010 OhioApp. LEXIS 4938 at *17 [affirming grant of summary judgment against plaintiff on breach of fiduciary duty claim where "[n]o other alleged conduct occurred apart from that forming the basis of the legal malpractice claim"]; Nettleton v. Stogsdill (2008) 387 Ill.App.3d 743, 326 Ill.Dec. 601, 899 N.E.2d 1252, 1268 ["Because plaintiff's claim for breach of fiduciary duty was based on the same operative facts and alleged the same injury as her claim for legal malpractice, the dismissal of plaintiff's breach of fiduciary duty claim was appropriate"]; Pereira v. Thompson (2008) 230 Or.App. 640, 217 P.3d 236, 247 [noting that the two "claims are distinct" because "[a]n attorney negligence claim concerns competence [and] a breach of fiduciary claim concerns loyalty"]; Murphy v. Gruber (Tex.Ct.App. 2007) 241 S.W.3d 689, 694 ["This court has differentiated between claims against a lawyer for professional negligence and breach of fiduciary duty"]; Aller v. Law Office of Carole C. Schriefer (Colo.Ct.App. 2005) 140 P.3d 23, 28 ["When a legal malpractice claim and a breach of fiduciary duty claim arise from the same material facts, the breach of fiduciary duty claim should be dismissed as duplicative"]; and Vallinoto v. DiSandro (1997) --- R.I. ----, 688 A.2d 830, 834-838 [distinguishing between negligence-based malpractice claim and claim for breach of fiduciary duty].)
Moreover, we have found no authority in this jurisdiction or elsewhere concluding otherwise. Indeed, neither party to this *421 appeal has disputed this widely-accepted proposition.
We also note that, in an analogous context, our courts have adopted the well-established principle that, if a tort cause of action for insurance bad faith is based solely upon the facts which give rise to a related contract cause of action, no separately actionable tort claim is stated. "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." (Careau v. Security Pacific Business Credit, Inc . (1990) 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 ; see also Congleton v. National Union Fire Ins. Co. (1987) 189 Cal.App.3d 51, 59, 234 Cal.Rptr. 218.)
Accordingly, we conclude that, when the basis for a claim of breach of fiduciary duty arises from the same facts and seeks the same relief as the attorney negligence claim for malpractice, the claim for breach of fiduciary duty is duplicative and should be dismissed.
2. Plaintiff's Evidence
Plaintiff's expert Kathleen March testified that there was an alternative to litigating in state court the issue of whether the lease assignment transferred the cause of action for breach of the right of first refusal provision. March testified that plaintiff could have filed in the bankruptcy court a motion for clarification of whether that cause of action transferred to plaintiff as an incident of the lease assignment because the order granting the assignment explicitly retained jurisdiction over enforcement of the order and gave the parties the "right" to return to bankruptcy court for that purpose. According to March, a motion for clarification in the bankruptcy court would have been heard within 24 days of service and filing, or perhaps on shortened time.
Plaintiff's expert Christopher Rolin testified that defendants had a duty to communicate the bankruptcy court option to plaintiff because it was "a direct path" to the determination of whether the accrued cause of action had transferred to plaintiff as an incident of the lease assignment. According to Rolin, the decision of whether to proceed in state court or seek bankruptcy court clarification was a "big" decision such that defendants "should have advised [plaintiff] of the risks, the costs, and the likelihood of success in the bankruptcy court." Rolin opined that because state court litigation was "an expensive proposition, it should have been diagrammed for the client." He concluded that, by failing to advise plaintiff of the option to seek bankruptcy court clarification, while continuing to litigate the issue in state court, defendants breached the fiduciary duty owed to plaintiff.
Lorber testified that she never received any written communication from Norminton in which he discussed the option of returning to the bankruptcy court for clarification of the stipulated bankruptcy court order. Lorber also maintained that Norminton did not advise her of this option in any of their meetings or telephone conversations regarding the Elixir action.
In his testimony, Norminton confirmed that he never communicated the bankruptcy court option to plaintiff in writing. Norminton also testified that he was aware of the bankruptcy court's retention of jurisdiction at the time he filed the Elixir action and that he "never had any question in [his] mind that [plaintiff] could have gone back to bankruptcy court, whether it was under [the stipulated bankruptcy court order]
*422 or in another way, to seek clarification." Norminton further testified that, although he did not consider the bankruptcy court option at the time he filed the Elixir action, he "did certainly consider, at length, that option later," and "thought about it a number of times over the course of days and weeks," but ultimately decided not to seek bankruptcy court clarification.
3. Plaintiff's Evidence Did Not Establish a Claim for Breach of Fiduciary Duty
Drawing all inferences in favor of plaintiff, the evidence presented in plaintiff's case-in-chief showed that: (1) Norminton was aware of and considered the bankruptcy court option; (2) the option would have been less expensive and more expeditious than the state court litigation strategy pursued by defendants; and (3) Norminton chose not to pursue the bankruptcy court option, but did not inform plaintiff through Lorber or otherwise. Such evidence, without more, does not establish a breach of fiduciary duty claim.
We recognize the evidence adduced by plaintiff might have been sufficient to show professional negligence, in that it could support a finding that defendants negligently failed to present an important litigation strategy to their client.[8] But such evidence could not support any finding that, beyond a failure to meet a reasonable standard of professional care, defendants breached any distinct duty of confidentiality or loyalty in support of a viable claim for breach of fiduciary duty.
Plaintiff suggests a theory that might support a finding that defendants' failure to inform plaintiff of the bankruptcy court option constituted a breach of fiduciary duty, namely that defendants intentionally concealed the option to litigate in bankruptcy court due to a self-interested financial motive to continue litigating in state court. (See Riverwalk Cy Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP (Tex.Ct.App. 2012) 391 S.W.3d 229, 236 ["A breach of fiduciary duty occurs when an attorney, among other things, subordinates his client's interest to his own, retains the client's funds, engages in self-dealing, improperly uses client confidences, fails to disclose conflicts of interest, or makes misrepresentations to achieve these ends"].) But, even when viewed in the light most favorable to plaintiff, the evidence presented in plaintiff's case-in-chief did not support a reasonable inference that Norminton harbored an intent to take advantage of plaintiff by billing it for fees that he knew were not justified. It would be entirely speculative to infer defendants intended to harm plaintiff solely from the nondisclosure of the bankruptcy option or the fact that they received approximately $420,000 in attorney fees and costs for the Elixir action. To conclude otherwise would mean that any time an attorney is compensated for pursuing a losing litigation strategy that the attorney did not fully vet with the client, we must assume the attorney did so to fleece the client. Without any additional evidence, that conclusion is pure conjecture and speculation, which cannot withstand a motion for nonsuit. ( Kidron v. Movie Acquisition Corp. (1995) 40 Cal.App.4th 1571, 1580-1581, 47 Cal.Rptr.2d 752 ; California Shoppers, Inc. v. Royal Globe Ins. Co. (1985) 175 Cal.App.3d 1, 44-45, 221 Cal.Rptr. 171.)
We therefore hold that the trial court correctly concluded plaintiff did not make out a claim for breach of fiduciary duty *423 based on the failure to advise plaintiff of the bankruptcy court option.
II. Plaintiff's Motion In Limine†
DISPOSITION
The judgment is affirmed. Defendants are awarded their costs on appeal.
We concur:
TURNER, P.J.
BAKER, J.

Judge of the Superior Court of the County of Los Angeles, appointed by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Because our resolution of the issues raised on appeal does not require a comprehensive statement of the trial evidence, we set forth only a summary of the relevant factual background to provide context for the legal discussion that follows. The trial evidence necessary to the resolution of the nonsuit rulings is set forth in the discussion of those issues.

Lorber's husband, Arnold, died in 2000.

At trial in the instant malpractice case, there was conflicting evidence as to whether Lorber Industries knew of the transfer of title to Sahm.

Prior to trial, the trial court had denied defendants' motions for summary judgment and/or summary adjudication with the exception of granting summary adjudication in favor of defendants as to plaintiff's claims for punitive damages.

See footnote *, ante.

As we noted above, the jury ultimately found that defendants did not breach any duty of care in connection with representing plaintiff.

See footnote *, ante.