Filed 4/19/17

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BROADWAY VICTORIA, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NORMINTON, WIITA & FUSTER et al.,<br><br>    Defendants and Respondents. | B266060<br><br>(Los Angeles County<br>Super. Ct. No. SC119091) |

        APPEAL from a judgment of the Superior Court of the County of Los Angeles, Gerald Rosenberg, Judge.  Affirmed.
        Degani & Galston LLP, Katherine Galston; and Krane & Smith, Marc Smith and Daniel L. Reback, for Plaintiff and Appellant.
        Nemecek & Cole, Mark Schaeffer and Janette Bodenstein for Defendants and Respondents.

---

[*]     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of DISCUSSION subpart A of section I and section II.

# INTRODUCTION

Plaintiff and appellant Broadway Victoria, LLC (plaintiff) sued its former attorneys, Norminton, Wiita, & Fuster, Thomas Norminton, and Thomas Norminton, PC (defendants) for legal malpractice and breach of fiduciary duty arising from defendants' representation of plaintiff in an earlier breach of contract action. On appeal from a judgment in favor of defendants, plaintiff contends that the trial court erred when it granted defendants' nonsuit motions on one of plaintiff's malpractice claims and its breach of fiduciary duty claim. Plaintiff also contends that the trial court abused its discretion in denying plaintiff's motion in limine to exclude evidence of alleged prior fraud by failing to weigh the prejudicial effect of that evidence against its probative value, as required under Evidence Code section 352 (section 352).

In the published portion of this opinion, we affirm the grant of nonsuit on plaintiff's breach of fiduciary claim because plaintiff did not adduce any evidence in support of that claim beyond the evidence offered in support of its malpractice claim for professional negligence. We also affirm the judgment in all other respects.

# BACKGROUND[1]

## I.     The Underlying Breach of Contract Action

Because plaintiff's malpractice and breach of fiduciary duty claims arise from defendants' representation of plaintiff in an underlying suit against a third-party for breach of contract, we first discuss the events giving rise to the breach of contract claim and the results of that lawsuit.

### A.     The Lease and Right of First Refusal

Plaintiff, a limited liability company in the business of owning and leasing commercial real estate, was owned by Anita Lorber (Lorber) and her husband.[2]  Lorber and her husband also owned a textile manufacturing business, Lorber Industries of California, Inc. (Lorber Industries).

In 1996, Lorber Industries leased a parcel of industrial land (the lease) in Carson (the property) from Elixir Industries (Elixir).  The lease for the property provided, inter alia, that Lorber Industries had a right of first refusal, i.e., if, during the 20-year term of the lease, Elixir received an offer to buy the property, Elixir was required to provide Lorber Industries 10-days written notice of the offer, which Lorber Industries then had

---

[1]     Because our resolution of the issues raised on appeal does not require a comprehensive statement of the trial evidence, we set forth only a summary of the relevant factual background to provide context for the legal discussion that follows.  The trial evidence necessary to the resolution of the nonsuit rulings is set forth in the discussion of those issues.

[2]     Lorber's husband, Arnold, died in 2000.

the right to match. The lease also included an option to purchase the property at the end of the lease and an attorney fees provision entitling the prevailing party in any lease dispute to recover its attorney fees.

After Lorber Industries entered into the lease, plaintiff constructed a 44,000 square foot industrial building on the property. Plaintiff spent between $1.7 and $2 million to construct the building.

In 2004, Elixir sold the property to Sahm Broadway Property, LLC (Sahm). According to Lorber, Elixir never provided Lorber Industries with written or oral notice that Elixir was selling the property to Sahm.[3]

### B.   Lorber Industries' Bankruptcy

In February 2006, Lorber Industries filed a voluntary petition under Chapter 11 of the Bankruptcy Code. In June 2006, Lorber Industries filed a motion in the bankruptcy court seeking an order authorizing it, as debtor-in-possession, to assume and assign the lease to Sahm or the highest bidder. Plaintiff, represented by the law firm of Buchalter Nemer (Buchalter), made the highest bid for the lease assignment. In August 2006, the bankruptcy court granted Lorber Industries' motion and entered a stipulated order authorizing Lorber Industries to assume the lease and assign it to plaintiff. The order provided that plaintiff was assigned the lease for the following consideration: a credit bid of $800,000, based on the settlement of a $6.5 million secured claim against the bankruptcy

---

[3]   At trial in the instant malpractice case, there was conflicting evidence as to whether Lorber Industries knew of the transfer of title to Sahm.

4

estate filed by Lorber; an $800,000 guaranty by Lorber; a $250,000 payment; and a release between plaintiff, Lorber, and other entities, on the one hand, and Lorber Industries, the creditors' committee, and the bankruptcy estate, on the other. The stipulated order further provided that the bankruptcy court retained jurisdiction to determine "all matters" arising from the implementation of that order.

### C. Plaintiff Sues Elixir in State Court

According to Lorber, in September 2008, she first learned through her real estate broker that Elixir had sold the property to Sahm. In October 2008, defendants, through attorney Thomas Norminton (Norminton), agreed to represent plaintiff concerning its claim against Elixir for selling the property without providing plaintiff an opportunity to exercise its right of first refusal. There was no written retainer agreement governing that representation.

In late October 2008, in the Superior Court of Los Angeles County, defendants filed on behalf of plaintiff a complaint against Elixir, alleging breach of contract (Elixir action). Plaintiff alleged that it had purchased all of Lorber Industries' rights under the lease, including Lorber Industries' cause of action against Elixir for breach of the right of first refusal provision. According to plaintiff, Elixir breached the right of first refusal provision when it sold the property to Sahm without providing Lorber Industries with notice of the sale. In January 2009, Elixir filed an amended answer that asserted an affirmative defense alleging that plaintiff lacked standing to bring the suit.

In April 2009, Elixir filed a motion for judgment on the pleadings on the ground that plaintiff did not have standing to

sue for breach of the right of first refusal provision. According to Elixir, plaintiff lacked standing "because such standing reside[d] with the bankruptcy trustee and/or debtor-in-possession." Defendants opposed the motion on plaintiff's behalf, arguing that the assignment of the lease to plaintiff "passed" the cause of action against Elixir to plaintiff. In June 2009, the trial court denied the motion for judgment on the pleadings. The trial court also denied Elixir's subsequent motions to amend its discovery response that admitted Elixir had no facts to support its affirmative defense based on lack of standing.

In January 2010, Elixir filed a motion for summary judgment, again asserting that the assignment of the lease to plaintiff did not include the cause of action against Elixir for breach of the right of first refusal provision. Plaintiff opposed the motion, maintaining that the cause of action transferred to plaintiff as part of the lease assignment.

In May 2010, the trial court granted Elixir's summary judgment motion, concluding that neither the motion to approve assignment of the lease nor the stipulated bankruptcy court order approving the assignment transferred the cause of action against Elixir as part of the lease assignment to plaintiff. In August 2011, the Court of Appeal affirmed the trial court's order granting Elixir's summary judgment motion and, in November 2011, the Supreme Court denied plaintiff's petition for review.

In connection with the Elixir action, plaintiff ultimately paid defendants approximately $420,000 in attorney fees and costs for services rendered. In addition, plaintiff paid Elixir $325,000 to settle Elixir's claim for attorney fees as the prevailing party pursuant to the lease's attorney fees provision.

6

## II.    The Instant Malpractice Suit

In November 2012, plaintiff sued defendants for legal malpractice and breach of fiduciary duty in connection with the Elixir action.  In June 2013, plaintiff filed the operative first amended complaint asserting the same causes of action.

Plaintiff's malpractice claim included the following two theories of legal malpractice that are relevant to this appeal:  (1) defendants' failure to advise plaintiff of a potential claim it had against Buchalter for purported malpractice in the bankruptcy case over Buchalter's handling of the right to sue Elixir in connection with the assignment of the lease to plaintiff; and (2) defendants' failure to seek in the bankruptcy court clarification of whether the cause of action against Elixir was included in the lease assignment instead of litigating the issue in the Elixir action.  The breach of fiduciary duty claim was based on the exact same conduct and acts alleged as the basis for the malpractice claim.

The matter proceeded to jury trial in April 2015.[4] Following the presentation of plaintiff's case-in-chief, defendants filed motions for nonsuit on the breach of fiduciary duty claim and on that part of the legal malpractice claim based on the alleged failure to advise plaintiff about a potential malpractice claim against Buchalter.  Following argument on the nonsuit motions, the trial court ruled that defendants did not have a duty to advise plaintiff about a potential malpractice claim against Buchalter and that, in any event, defendants advised plaintiff to

---

[4]    Prior to trial, the trial court had denied defendants' motions for summary judgment and/or summary adjudication with the exception of granting summary adjudication in favor of defendants as to plaintiff's claims for punitive damages.

7

consult a legal malpractice attorney about such a claim. The trial court also granted the nonsuit motion on the breach of fiduciary duty claim.

Following the completion of trial on plaintiff's remaining malpractice claim that defendants negligently failed to seek clarification of plaintiff's rights in the bankruptcy court, the jury returned a special verdict finding that defendants did not breach any duty of care owed to plaintiff in representing plaintiff on its claims against Elixir for breach of the lease. The trial court entered judgment on the verdict, and plaintiff filed a timely notice of appeal.

## DISCUSSION

### I.     Defendants' Motions for Nonsuit

"A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 117-118 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].) 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in [the] plaintiff['s] favor."' (*Id.*, at p. 118.) A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' (7 Witkin,

Cal. Procedure (3d ed. 1985) Trial, § 410, p. 413, italics in original.) [¶] In reviewing a grant of nonsuit, we are 'guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff.' (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 839 [206 Cal.Rptr. 136, 686 P.2d 656].) We will not sustain the judgment "'unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.'" (*Ibid.*, quoting *Mason v. Peaslee* (1959) 173 Cal.App.2d 587, 588 [343 P.2d 805].)" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.)

We review the grant of a nonsuit de novo. (*Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1412.)

### A. Nonsuit on Malpractice Claim

Plaintiff contends that the trial court erred when it granted the nonsuit motion on its malpractice claim arising from defendants' failure to advise plaintiff that it might have a potential malpractice claim against Buchalter for its handling of the assignment of the lease in the bankruptcy action. We find no error because defendants had no duty to so advise plaintiff.

#### 1. Attorney's Duty of Care

"To prove a legal malpractice cause of action, the plaintiff must show: (1) a duty by the attorney to use such skill, prudence and diligence as members of his or her profession commonly possess and exercise; (2) breach of that duty; (3) a proximate causal connection between the breach and the resulting injury;

9

and (4) actual loss or damage resulting from the attorney's negligence.  [Citations]"  (*Redante v. Yockelson* (2004) 112 Cal.App.4th 1351, 1356.)

With respect to an attorney's duty of care, an attorney may have a duty to advise a client about related matters that fall outside the scope of the agreed-upon representation.  "[A]n attorney who undertakes one matter on behalf of a client owes that client the duty to at least consider and advise the client if there are apparent related matters that the client is overlooking and that should be pursued to avoid prejudicing the client's interests.  '[E]ven when a retention is expressly limited, the attorney may still have a duty to alert the client to legal problems which are reasonably apparent, even though they fall outside the scope of the retention.'  [Citations]."  (*Janik v. Rudy, Exelrod & Zieff* (2004) 119 Cal.App.4th 930, 940 (*Janik*).)

"The existence and scope of duty are legal questions for the court."  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)

### 2. *Defendants Had No Duty to Advise of Potential Malpractice Suit*

The evidence during plaintiff's case-in-chief established that, when Lorber met with Norminton to hire defendants to represent plaintiff, the scope of such representation was to sue Elixir for breach of the right of first refusal provision in the lease.  Norminton agreed to that representation as discussed.  Thus, the duty to provide advice concerning malpractice by Buchalter in the

10

bankruptcy action fell outside the scope of the agreed-upon representation established by the evidence at trial.[5]

Moreover, although an attorney may have a duty to advise a client about related matters beyond the scope of the agreed-upon representation, if such matters present legal problems that are reasonably apparent (*Janik, supra,* 119 Cal.App.4th at p. 940), the evidence presented during plaintiff's case-in-chief did not demonstrate that a claim against Buchalter for malpractice should have been reasonably apparent to defendants. To the contrary, although the trial court ultimately found in the Elixir action that plaintiff lacked standing, that summary judgment ruling came after defendants had successfully opposed both Elixir's motion for judgment on the pleadings based on lack of standing and Elixir's motion to amend its discovery response that admitted Elixir had no facts to support its affirmative defense based on lack of standing. Plaintiff's own expert, Christopher Rolin, testified that the California Supreme Court's decision in *National Reserve Co. v. Metropolitan Trust Co.* (1941) 17 Cal.2d 827 [holding that, in the absence of any contra indication by the parties, assignment of a contract also transfers any causes of action arising from the contract], supported the position that the cause of action against Elixir transferred with the lease assignment approved by the bankruptcy court, thereby conferring plaintiff with standing. Given the seemingly close call throughout the litigation over whether plaintiff had standing, we

---

[5]     We reject plaintiff's suggestion that the lack of a written retainer agreement meant that defendants' scope of representation and attendant duty to advise was essentially limitless. Rather, the scope of representation was defined by the evidence of the parties' agreement, whether or not in writing.

11

cannot conclude that it should have been reasonably apparent to defendants that Buchalter had committed malpractice when handling the assignment of the lease in the bankruptcy action.

Indeed, as was made clear from an email from Norminton to Lorber that was introduced at trial, legal malpractice is a specialty, and Norminton was not a malpractice attorney.[6] Plaintiff's expert Rolin also confirmed that Norminton was not a malpractice lawyer. By contrast, the testimony of plaintiff's other expert, March, who opined that Buchalter's handling of the lease assignment in the bankruptcy action fell below the standard of care, proves the point—March rendered that opinion based on her service as a federal bankruptcy court judge for 14 years, followed by 12 years of bankruptcy law practice. It is simply not reasonable to conclude that an attorney in Norminton's position would have been alerted to a potential claim for malpractice against Buchalter for its actions in the bankruptcy proceedings. (See *Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1686 [noting that "[f]oreseeability of harm" is a "chief factor" in deciding whether a duty arose].)

Because we conclude that a claim for malpractice against Buchalter would not have been reasonably apparent to defendants under the circumstances, defendants did not have a duty to advise plaintiff of such a claim. We therefore affirm the

---

[6] Defendants contend this email, which referred Lorber to a malpractice attorney to consult on "issues with [an unrelated attorney] and other attorneys who have represented [plaintiff]," was sufficient to satisfy any duty they may have had to inform plaintiff of Buchalter's potential malpractice. We do not address this contention because we conclude there was no such duty.

12

trial court's grant of nonsuit on this claim of malpractice against defendants.[7]

## B.    Nonsuit on Fiduciary Duty Claim

Plaintiff contends the trial court erred when it granted the nonsuit motion on its breach of fiduciary duty claim.  That claim was premised on plaintiff's theory that, in order to generate greater attorneys fees by continuing to litigate the issue of standing in state court, defendants did not inform plaintiff of the potentially faster and cheaper option of seeking in the bankruptcy court clarification of whether the assignment of the lease to plaintiff included the right to bring the breach of contract action against Elixir.  We conclude that nonsuit was properly granted on this claim.

### 1.    *Breach of Fiduciary Duty*

"The elements of a cause of action for breach of fiduciary duty are:  (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. (*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101 [3 Cal.Rptr.2d 236].)"  (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.)

---

[7]    Because we affirm on the basis that defendants had no duty, we do not address defendants' contention that plaintiff adduced no evidence of causation or damages.  Moreover, however meritorious, we cannot address that contention because defendants did not raise it in their motion for nonsuit (see *Lawless v. Calaway* (1944) 24 Cal.2d 81, 93-94), even though it appears plaintiff introduced no evidence that it would have acted upon advice that it might have a potential cause of action against Buchalter.

13

"The scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his [or her] client.' (*Mirabito v. Liccardo* (1992) 4 Cal.App.4th 41, 45 [5 Cal.Rptr.2d 571]; *David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 890 [250 Cal.Rptr. 339].) Whether an attorney has breached a fiduciary duty to his or her client is generally a question of fact. (*David Welch Co. v. Erskine & Tulley*, *supra*, 203 Cal.App.3d at p. 890.) Expert testimony is not required (*id.* at pp. 892-893), but is admissible to establish the duty and breach elements of a cause of action for breach of fiduciary duty where the attorney conduct is a matter beyond common knowledge (*id.* at p. 893; *Mirabito v. Liccardo*, *supra*, 4 Cal.App.4th at pp. 45-46; see also *Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1146-1147 [217 Cal.Rptr. 89])." (*Stanley v. Richmond, supra,* 35 Cal.App.4th at p. 1086.)

A breach of fiduciary duty is a tort claim entirely distinct from a malpractice claim based on professional negligence. (*Barbara A. v. John G.* (1983) 145 Cal.App.3d 369, 382-383; cf. *Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [elements of cause of action for professional negligence].) Beyond mere allegations of professional negligence, a cause of action for breach of fiduciary duty requires some further violation of the obligation of trust, confidence, and/or loyalty to the client. (2 Mallen & Smith, Legal Malpractice (2017) § 15.3, pp. 660-661 ["[F]iduciary breach allegations that constitute negligence, which do not implicate a duty of confidentiality or loyalty, and are merely duplicative of a

14

negligence cause of action, do not support a cause of action for fiduciary breach"].)

It appears that no California court has explicitly held that a breach of fiduciary duty claim cannot merely duplicate a claim for professional negligence. (See *Buehler v. Sbardellati* (1995) 34 Cal.App.4th 1527, 1544 fn. 9 [noting "there is authority for the view the breach of fiduciary duty theory is separate from the professional negligence theory" but "leav[ing] any resolution of this separate cause of action question to another case"].) In other jurisdictions, however, there appears to be universal agreement that a breach of fiduciary claim cannot stand if it is merely based on duplicative allegations of professional negligence by the attorney. (See, e.g., *Pippen v. Pederson and Houpt* (Ill.Ct.App. 2013) 986 N.E.2d 697, 705 [finding breach of fiduciary duty claim duplicative where "plaintiff's negligence and breach of fiduciary duty claims share the same operative facts and injuries . . . and those injuries were actually caused by defendant's allegedly negligent acts"]; *Cosmetics Plus Group, Ltd. v. Traub* (N.Y.Sup.Ct.App.Div. 2013) 105 A.D.3d 134, 143 ["[W]e find that the cause of action for breach of fiduciary duty was properly dismissed as duplicative of the legal malpractice claim. It arose out of the same facts as the legal malpracice claim . . ."]; *Crist v. Loyacono* (Miss. 2011) 65 So.3d 837, 842-843 ["The law recognizes a clear distinction between allegations of legal malpractice based on negligence (sometimes called a breach of the standard of care) and those based on breach of fiduciary duty (sometimes called a breach of the standard of conduct)"]; *Illinois National Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.* (Ohio Ct.App. Dec. 2, 2010, No. 10AP-290) 2010 OhioApp. LEXIS 4938, at *17 [affirming grant of summary judgment against plaintiff on breach

15

of fiduciary duty claim where "[n]o other alleged conduct occurred apart from that forming the basis of the legal malpractice claim"]; *Nettleton v. Stogsdill* (Ill.Ct.App. 2008) 899 N.E.2d 1252, 1268 ["Because plaintiff's claim for breach of fiduciary duty was based on the same operative facts and alleged the same injury as her claim for legal malpractice, the dismissal of plaintiff's breach of fiduciary duty claim was appropriate"]; *Pereira v. Thompson* (Or.Ct.App. 2008) 217 P.3d 236, 247 [noting that the two "claims are distinct" because "[a]n attorney negligence claim concerns competence [and] a breach of fiduciary claim concerns loyalty"]; *Murphy v. Gruber* (Tex.Ct.App. 2007) 241 S.W.3d 689, 694 ["This court has differentiated between claims against a lawyer for professional negligence and breach of fiduciary duty"]; *Aller v. Law Office of Carole C. Schriefer* (Colo.Ct.App. 2005) 140 P.3d 23, 28 ["When a legal malpractice claim and a breach of fiduciary duty claim arise from the same material facts, the breach of fiduciary duty claim should be dismissed as duplicative"]; and *Vallinoto v. DiSandro* (R.I. 1997) 688 A.2d 830, 834-838 [distinguishing between negligence-based malpractice claim and claim for breach of fiduciary duty].)

Moreover, we have found no authority in this jurisdiction or elsewhere concluding otherwise. Indeed, neither party to this appeal has disputed this widely-accepted proposition.

We also note that, in an analogous context, our courts have adopted the well-established principle that, if a tort cause of action for insurance bad faith is based solely upon the facts which give rise to a related contract cause of action, no separately actionable tort claim is stated. "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other

16

relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." (*Careau v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395; see also *Congleton v. National Union Fire Ins. Co.* (1987) 189 Cal.App.3d 51, 59.)

Accordingly, we conclude that, when the basis for a claim of breach of fiduciary duty arises from the same facts and seeks the same relief as the attorney negligence claim for malpractice, the claim for breach of fiduciary duty is duplicative and should be dismissed.

### 2.     *Plaintiff's Evidence*

Plaintiff's expert Kathleen March testified that there was an alternative to litigating in state court the issue of whether the lease assignment transferred the cause of action for breach of the right of first refusal provision.  March testified that plaintiff could have filed in the bankruptcy court a motion for clarification of whether that cause of action transferred to plaintiff as an incident of the lease assignment because the order granting the assignment explicitly retained jurisdiction over enforcement of the order and gave the parties the "right" to return to bankruptcy court for that purpose.  According to March, a motion for clarification in the bankruptcy court would have been heard within 24 days of service and filing, or perhaps on shortened time.

Plaintiff's expert Christopher Rolin testified that defendants had a duty to communicate the bankruptcy court option to plaintiff because it was "a direct path" to the determination of whether the accrued cause of action had transferred to plaintiff as an incident of the lease assignment.

17

According to Rolin, the decision of whether to proceed in state court or seek bankruptcy court clarification was a "big" decision such that defendants "should have advised [plaintiff] of the risks, the costs, and the likelihood of success in the bankruptcy court." Rolin opined that because state court litigation was "an expensive proposition, it should have been diagrammed for the client." He concluded that, by failing to advise plaintiff of the option to seek bankruptcy court clarification, while continuing to litigate the issue in state court, defendants breached the fiduciary duty owed to plaintiff.

Lorber testified that she never received any written communication from Norminton in which he discussed the option of returning to the bankruptcy court for clarification of the stipulated bankruptcy court order. Lorber also maintained that Norminton did not advise her of this option in any of their meetings or telephone conversations regarding the Elixir action.

In his testimony, Norminton confirmed that he never communicated the bankruptcy court option to plaintiff in writing. Norminton also testified that he was aware of the bankruptcy court's retention of jurisdiction at the time he filed the Elixir action and that he "never had any question in [his] mind that [plaintiff] could have gone back to bankruptcy court, whether it was under [the stipulated bankruptcy court order] or in another way, to seek clarification." Norminton further testified that, although he did not consider the bankruptcy court option at the time he filed the Elixir action, he "did certainly consider, at length, that option later," and "thought about it a number of times over the course of days and weeks," but ultimately decided not to seek bankruptcy court clarification.

### 3. *Plaintiff's Evidence Did Not Establish a Claim for Breach of Fiduciary Duty*

Drawing all inferences in favor of plaintiff, the evidence presented in plaintiff's case-in-chief showed that: (1) Norminton was aware of and considered the bankruptcy court option; (2) the option would have been less expensive and more expeditious than the state court litigation strategy pursued by defendants; and (3) Norminton chose not to pursue the bankruptcy court option, but did not inform plaintiff through Lorber or otherwise. Such evidence, without more, does not establish a breach of fiduciary duty claim.

We recognize the evidence adduced by plaintiff might have been sufficient to show professional negligence, in that it could support a finding that defendants negligently failed to present an important litigation strategy to their client.[8] But such evidence could not support any finding that, beyond a failure to meet a reasonable standard of professional care, defendants breached any distinct duty of confidentiality or loyalty in support of a viable claim for breach of fiduciary duty.

Plaintiff suggests a theory that might support a finding that defendants' failure to inform plaintiff of the bankruptcy court option constituted a breach of fiduciary duty, namely that defendants intentionally concealed the option to litigate in bankruptcy court due to a self-interested financial motive to continue litigating in state court. (See *Riverwalk Cy Hotel Partners Ltd. v. Akin Gump Strauss Hauer & Feld LLP* (Tex.Ct.App. 2012) 391 S.W.3d 229, 236 ["A breach of fiduciary

---

[8] As we noted above, the jury ultimately found that defendants did not breach any duty of care in connection with representing plaintiff.

19

duty occurs when an attorney, among other things, subordinates his client's interest to his own, retains the client's funds, engages in self-dealing, improperly uses client confidences, fails to disclose conflicts of interest, or makes misrepresentations to achieve these ends"].)  But, even when viewed in the light most favorable to plaintiff, the evidence presented in plaintiff's case-in-chief did not support a reasonable inference that Norminton harbored an intent to take advantage of plaintiff by billing it for fees that he knew were not justified.  It would be entirely speculative to infer defendants intended to harm plaintiff solely from the nondisclosure of the bankruptcy option or the fact that they received approximately $420,000 in attorney fees and costs for the Elixir action.  To conclude otherwise would mean that any time an attorney is compensated for pursuing a losing litigation strategy that the attorney did not fully vet with the client, we must assume the attorney did so to fleece the client.  Without any additional evidence, that conclusion is pure conjecture and speculation, which cannot withstand a motion for nonsuit. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1580-1581; *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 44-45.)

We therefore hold that the trial court correctly concluded plaintiff did not make out a claim for breach of fiduciary duty based on the failure to advise plaintiff of the bankruptcy court option.

## II.    Plaintiff's Motion In Limine

Prior to trial, plaintiff filed a motion in limine to exclude evidence of Lorber Industries' alleged business practices, including alleged customs fraud.  The trial court denied that

20

motion.  Plaintiff contends the trial court erred by failing to adequately weigh the likely prejudice that would result from the admission of such evidence against its limited probative value, as is required under section 352.  We disagree.

###    A.    Background

Plaintiff moved under section 352 to exclude evidence of alleged business practices of Lorber Industries, including evidence that Lorber Industries allegedly committed—and was investigated for committing—customs fraud by misrepresenting the country of origin from which it imported goods in order to pay lower tariffs or duties to the government.  Defendants argued the customs fraud evidence was critical to defending against the malpractice claim that they were negligent in not seeking clarification from the bankruptcy court whether the breach of contract cause of action was transferred with the assignment of the lease.  According to defendants, Norminton was "deeply concerned" that returning to the bankruptcy court would expose Lorber and other principals of Lorber Industries to potential criminal liability based on the alleged fraud and might jeopardize the agreement concerning the lease assignment which included a release of all claims against plaintiff, Lorber, and related entities.

The trial court denied the motion, concluding that Norminton should be allowed to testify that his concern about the alleged customs fraud was one of the factors he considered when deciding whether to seek bankruptcy court clarification.  In ruling on the motion in limine, the trial court engaged in the following exchange with the parties.

"THE COURT:  So you want [testimony about the customs fraud admitted] . . . because [Norminton's] position is[,] in terms

21

of deciding what tactic to use and whether or not [he] was going to go back to the bankruptcy court, this [was] one of the factors [he] considered?

"[DEFENSE COUNSEL]:  Two factors.

"THE COURT:  I said this was one of them?

"[DEFENSE COUNSEL]:  One of them is the customs issues, absolutely . . . .

"THE COURT:  So let me go back to [plaintiff's counsel]. [I]f this is now litigation between client and attorney, what does that do to the privilege?

"[PLAINTIFF'S COUNSEL]:  Well, what I am saying on the privilege issue is that the communications - - Tom Lorber [Arnold and Anita Lorber's son] and Anita Lorber, as individuals, had discussions with . . . Norminton about this issue, about this customs issue.  That is . . . privileged.  . . .

"THE COURT:  You know what, if that is [Norminton's] position, and I am not here to say he is justified in doing any of this, but if that is his position, and now there is litigation between client and attorney, I think the privilege is waived. [L]ook, you can stand up in front of this jury and show otherwise, but if [Norminton] is contending [the alleged customs fraud] was a consideration, I think he can bring it out.

"[PLAINTIFF'S COUNSEL]:  Your honor, the problem with this is under [section] 352, there has never been a criminal charge.  They are going to get up there and talk about criminal charges.  It just infects the trial.  It makes it look like there [were] criminal charges when there [were not].  They are simply throwing [the alleged customs fraud] in.  [T]here is no evidence of any claim, anything ever done.  [T]here is no communication from . . . Norminton to the client saying, hey - -

22

"THE COURT:  That is something else.  Look, just stop. Stop.  [¶]  Denied.  This [motion] is denied.

"[PLAINTIFF'S COUNSEL]:  Can I just - -

"THE COURT:  Look, that doesn't mean that during the trial, if [defendants] are trying to introduce statements . . . for some other reason, you may object.  But right now, on the basis of privilege, or having some relevance to the action, since [Norminton] is contending [the alleged customs fraud] was a consideration, I am going to allow him . . . if he chooses, to testify about it."

### B.    Section 352[9]

"'[S]ection 352 vests discretion in the trial judge to exclude evidence where its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create a substantial danger of prejudice, of confusion of issues, or of misleading a jury." (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 674.)  "'Prejudic[ial]' in . . . section 352 does not mean 'damaging' to a party's case, it means evoking an emotional response that has very little to do with the issue on which the evidence is offered.  (*People v. Karis* (1988) 46 Cal.3d 612, 638 [250 Cal.Rptr. 659, 758 P.2d 1189].) Evidence which has probative value must be excluded under section 352 only if it is 'undu[ly]' prejudicial despite its legitimate

---

**9**    Section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

23

probative value. [Citation].)" (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 597.)

Although a trial court is required under section 352 to weigh potential prejudice against probative value, it is not required to make an express record of the weighing process it employed. "If a proper objection under section 352 is raised, the record must affirmatively demonstrate that the trial court did in fact weigh prejudice against probative value. The trial court need not make findings or expressly recite its weighing process, or even expressly recite that it has weighed the factors, so long as the record as a whole shows the court understood and undertook its obligation to perform the weighing function. (*People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6 [94 Cal.Rptr.2d 396, 996 P.2d 46]; *People v. Crittenden* (1994) 9 Cal.4th 83, 135 [36 Cal.Rptr.2d 474, 885 P.2d 887]; *People v. Triplett* (1993) 16 Cal.App.4th 624, 627-629 [20 Cal.Rptr.2d 225].)" (*Rufo v. Simpson, supra,* 86 Cal.App.4th at p. 599.)

We review a trial court's denial of a motion in limine made pursuant to section 352 for abuse of discretion. (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639.) This means we will not disturb the trial court's ruling unless the trial court's determination was beyond the bounds of reason and resulted in a manifest miscarriage of justice. (*People v. Waidla, supra,* 22 Cal.4th at p. 724.)

### C.     The Trial Court's Section 352 Balancing

Plaintiff contends the trial court abused its discretion when denying its motion in limine because the trial court failed to engage in the weighing process required by section 352. Plaintiff argues that the trial court denied the motion after finding the

24

evidence of customs fraud relevant, but without considering the prejudicial impact of such evidence.

In determining whether the record as a whole demonstrates that the trial court understood and engaged in the required weighing process under section 352, we consider the content and context of the arguments that were before the trial court and can reasonably infer findings that supported the trial court's denial of the motion in limine. (See *People v. Johnson* (1987) 193 Cal.App.3d 1570, 1573-1577.)

Based on the record of the hearing on the motion in limine, we conclude that the trial court was aware of plaintiff's prejudice arguments under section 352 and considered them in denying the motion. To begin with, we note that plaintiff's written motion set forth plaintiff's arguments under section 352, including plaintiff's claim that the uncharged customs fraud was unduly prejudicial; there is nothing in the record to suggest that the trial court did not read and consider those arguments.

In addition, during the motion hearing, plaintiff's counsel expressly reiterated the section 352 argument and specified the potential prejudice that would result from testimony about uncharged criminal conduct, stating that "the problem with this is under [section] 352, there has never been a criminal charge. They are going to get up there and talk about criminal charges. It just infects the trial. It makes it look like there [were] criminal charges when there [were not]." Close on the heels of hearing those prejudice arguments, the trial court denied the motion.

Reading the record as a whole, we find that the trial court conducted the requisite balancing test under section 352. The trial court explicitly acknowledged that defendants, in presenting their defense to the malpractice charge, had a right to present

25

evidence concerning the factors Norminton considered in deciding against returning to the bankruptcy court for clarification of the scope of the lease assignment. This included Norminton's concern about the customs fraud issue. The trial court entertained argument from plaintiff's counsel regarding the dangers of permitting the introduction of such evidence, and then denied plaintiff's motion. Because the record reflects that the trial court was aware of and considered the parties' respective relevance and prejudice arguments, we do not find the trial court abused its discretion by denying plaintiff's motion in limine to preclude evidence of customs fraud.

## DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION


KIN, J.*


We concur:



TURNER, P. J.



BAKER, J.

---

*       Judge of the Superior Court of the County of Los Angeles, appointed by the Chief Justice pursuant to article VI, section 6 of the California Constitution.