Filed 11/21/18 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FRANK C. HART et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>KEENAN PROPERTIES, INC.,<br><br>    Defendant and Appellant. | A152692<br><br>(Alameda County<br> Super. Ct. No. RG16838191)<br><br>**ORDER MODIFYING<br>PUBLICATION ORDER OF<br>NOVEMBER 19, 2018** |

**THE COURT:**

Due to clerical error and inadvertence, the order filed November 19, 2018 directing publication of the opinion in the above-referenced matter attached an incorrect attorney and trial court listing page. The correct attorney and trial court listing is attached to this order and shall replace the incorrect listing.

Dated: _____     _____, P.J.

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Brad Seligman

Counsel:

Maune Raichle Hartley French & Mudd, LLC, David L. Amell and Marissa Y. Uchimura for Plaintiffs and Respondents.

CMBG3 Law, W. Joseph Gunter, Gilliam F. Stewart for Defendant and Appellant

Filed 10/26/18; Certified for Publication 11/19/18 (order attached) (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT
DIVISION FIVE

| | |
|---|---|
| FRANK C. HART et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>KEENAN PROPERTIES, INC.,<br>    Defendant and Appellant. | A152692<br><br>(Alameda County<br>Super. Ct. No. RG16838191) |

Keenan Properties, Inc. ("Keenan") appeals from the judgment in an asbestos-related personal injury case. Frank C. Hart ("Mr. Hart") and Cynthia Hart ("Mrs. Hart") (collectively, "the Harts") sued Keenan and other entities alleging Mr. Hart developed mesothelioma as a result of exposure to asbestos-containing products. The jury found Keenan supplied pipes that exposed Mr. Hart to asbestos. This finding was based on a foreman's testimony regarding invoices purporting to show Keenan supplied asbestos-cement pipes to a worksite in McKinleyville, California in the 1970s. We conclude this testimony was based on inadmissible hearsay, and there was no other evidence Keenan supplied the pipes. Accordingly, we reverse the judgment against Keenan.

FACTUAL AND PROCEDURAL HISTORY

1

Mr. Hart suffers from mesothelioma, which is caused by exposure to asbestos. Mr. Hart worked in construction as a pipe layer, and, since 1985, he was a foreman of pipe layers.

*The McKinleyville Jobsite*

From September 1976 to March 1977, Mr. Hart worked in McKinleyville, and his job involved cutting asbestos-cement pipe. In McKinleyville, Mr. Hart worked for Christeve Corporation ("Christeve"). The project involved installing new sewer lines, and Mr. Hart worked with eight-inch, asbestos-cement pipe manufactured by Johns-Manville Corporation ("Johns-Manville"). Mr. Hart installed thousands of feet of the pipe. The pipe was delivered to the jobsite on flatbed trailers, but Mr. Hart did not know who supplied the pipe. As a pipe layer, Mr. Hart had no access to information regarding the supplier, but the "people that would know would be people who worked in the office or the foremen."

John Glamuzina ("Glamuzina") was one of Mr. Hart's foremen on the project in McKinleyville.[1] Glamuzina was Mr. Hart's direct supervisor from January to March 1977. Glamuzina observed Mr. Hart cut and bevel asbestos-cement pipe without any respiratory protection. Glamuzina estimated his crew laid over 4,000 feet of pipe.

Glamuzina knew Johns-Manville manufactured the pipe based on his observation of a stamp on the pipe. Glamuzina believed Keenan supplied the pipe because he signed invoices when truckers delivered loads. Glamuzina checked the invoices to make sure the load matched the information on the invoices. Glamuzina turned in a carbon copy of the invoices to the office at the end of the day. Glamuzina believed Keenan supplied all of the pipe his crew laid in McKinleyville.

---

[1] Due to his unavailability at the time of trial, the jury watched a videotape of Glamuzina's deposition, which occurred on March 13, 2017, almost four months prior to trial. Glamuzina was 81 years old at the time of his deposition.

Glamuzina could not recall exactly how Keenan was written on the invoices. Glamuzina was working in the field and in a hurry, so he checked the load and the numbers on the invoices, signed them, and gave them back to the truckers. He believed Keenan was the supplier based on "their K and stuff." Glamuzina did not recall the names of any other suppliers. Depending on how fast his crew was laying pipe, Glamuzina received about two or three loads of pipe per week. Other foremen also checked the invoices, and Glamuzina checked about one or two per week.

Olga Mitrovich, Christeve's bookkeeper in the 1970s, testified that employees, including Glamuzina, were responsible for accepting materials at the jobsite, and they would "initial the ticket," send it to Christeve's office, and Mitrovich would "compare the invoice with the delivery ticket" before paying the invoice. However, Mitrovich did not know if Keenan supplied asbestos-cement pipe to Christeve in McKinleyville.

Keenan's corporate representative, Timothy Garfield, acknowledged that Keenan sent its customers invoices. At his deposition, and during trial, he identified a document as a copy of a Keenan invoice.[2] The document contained Keenan's logo, which consisted of a "K" in a circle. However, the invoice was for products Keenan sold to an entity called Three D. Const. Co., not to Christeve in McKinleyville. Garfield testified he had "no information whatsoever that Keenan ever sold anything that was used in the McKinleyville work while Mr. Hart was working there."

*Complaint, Trial, Verdict, and Damages*

On November 6, 2016, the Harts filed a complaint for personal injury and loss of consortium against numerous entities, including Keenan. Keenan answered the complaint and denied the allegations. At trial, which began on July 5, 2017, Keenan was the only remaining defendant.

---

[2] The court marked this exhibit for identification but did not admit it into evidence, finding there was not a sufficient foundation to admit it.

3

On July 14, 2017, the jury rendered its verdict, finding, among other things, that Mr. Hart was exposed to asbestos-cement pipe supplied by Keenan. The jury awarded economic damages, non-economic damages, and damages for loss of consortium. The jury allocated fault among ten entities, finding that Keenan was 17% at fault. In its amended judgment, filed September 23, 2017, the court apportioned 45% of prior settlements to potential, future wrongful death claims, and the remaining 55% to the personal injury action. The total net verdict against Keenan was $1,626,517.82. Keenan timely appealed.

## DISCUSSION

On appeal, Keenan makes three arguments. First, Keenan contends the court "abused its discretion in allowing . . . Glamuzina's double hearsay testimony regarding the contents of an unavailable, unauthenticated 'receipt.' " Second, Keenan argues the testimony of an expert witness regarding Mr. Hart's medical expenses was inadmissible. Third, Keenan contends the court "erred when it included . . . [Mrs. Hart] among the prospective wrongful death heirs in determining the proportion of settlements to set aside for those heirs." We do not address Keenan's second and third arguments because we conclude there was no admissible evidence showing Keenan supplied asbestos-cement pipe to the McKinleyville jobsite.

### I.
*The Court Abused Its Discretion by Admitting Glamuzina's Testimony*

Keenan's first argument challenges the admissibility of Glamuzina's testimony regarding the supplier of the pipe at the McKinleyville jobsite. We begin with the standard of review.

A. *Standard of Review*

" ' "[A]n appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion." ' " (*Osborne v. Todd Farm Service* (2016) 247

4

Cal.App.4th 43, 50 (*Osborne*).)  A trial court abuses its discretion "only if the trial court's order exceeds the bounds of reason.  [Citation.]  'Where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the correct result for the decision of the trial court.'  [Citation.]  We will only interfere with the lower court's judgment if appellant can show that under the evidence offered, ' " 'no judge could reasonably have made the order that he did.' " ' "  (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679 (*DiCola*).)

B.      *Keenan's Motion in Limine*

Before trial, Keenan moved in limine to exclude Glamuzina's testimony.  Keenan argued the Harts could not authenticate purported Keenan invoices, and Glamuzina's testimony regarding Keenan invoices was inadmissible hearsay.  The Harts argued there was no need to authenticate the invoices because Glamuzina did not testify regarding their content.  At the hearing on this motion, the court tentatively denied it.  However, the court permitted the Harts to file a supplemental brief addressing *Osborne*, *supra*, 247 Cal.App.4th 43, a case in which the court excluded evidence purporting to establish the supplier of an item involved in an accident.  After considering the additional briefing, the court entered a written order denying the motion in limine.

C.      *The Court Abused Its Discretion by Denying Keenan's Motion to Exclude Glamuzina's Testimony*

On appeal, Keenan contends Glamuzina's testimony that Keenan was the supplier of the pipe used in McKinleyville was inadmissible hearsay.  We agree with Keenan.  We begin with a more detailed account of Glamuzina's testimony.

1.      *Glamuzina's Testimony*

To establish Keenan supplied asbestos-cement pipe to the McKinleyville jobsite, the Harts relied on Glamuzina's testimony regarding signing invoices when truckers delivered loads of the pipe.  Glamuzina testified as follows:

5

"Q. And how did you know Keenan was the supplier of the asbestos cement pipe that your crew was laying in the City of McKinleyville?

"A. Well, there would be different invoices to sign when the truckers would come up with a load.

"Q. Okay. Did you personally sign any of these invoices?

"A. There was a few. I can't remember how many.

"[¶] . . . [¶]

"Q. The invoices that you mentioned, what exactly did they have? What information did they have on them?

"A. It would just -- the trucker would have an invoice of his load, what he had on his load, and I'd just double-check it, see -- usually it tells you where it came from. That's all.

"Q. And what do you mean where it came from?

"A. What plant or -- stuff like that, I didn't -- all I would do is count the load and see what we had and sign it, and it would be off.

"Q. And what sort of materials was Keenan [s]upplying to the City of McKinleyville job?

"A. The transite pipe for the sewer.

"Q. This is the Johns-Manville transite pipe?

"A. Yeah. Yes.

"Q. Did you see the name Keenan on the invoices that you personally signed?

"A. I recall a few times, yes."

Later, when examined by another attorney, Glamuzina was asked:

"Q. You mentioned that some of the materials were supplied by Keenan, and you mentioned that you saw Keenan on some of the invoices; is that right?

"A. I recollect some of it, yes.

6

"Q. How was Keenan written on the invoices?

"A. I thought it was, if I can remember right, I think it was like a print, I'm not positive, like a black print or -- I can't -- to be honest, I can't recall exactly.

"Q. Do you know if it just said Keenan or if there were any other words?

"A. I couldn't answer that.

"Q. The invoices that you would see with Keenan written on there, what types of materials were being supplied by Keenan?

"A. I would just check the load for my eight-inch pipe, shorts or whatever came on the pipe, that's all I would check on that.

"Q. So you were checking the invoices to make sure that the amount of pipe or whatever materials were being supplied matched what was on the truck?

"A. Yeah, whenever I was there, when they delivered when I was there, I was always checking.

"Q. And did you ever have to sign any of the invoices indicating that you had done your check and the invoices matched what was being delivered?

"A. We did sign a trucker's invoice, yes.

"Q. And then what would you do with the invoice?

"A. I'd take a copy and give it to the office.

"Q. Would the trucker keep a copy of the invoice?

"A. He would keep his, that's correct.

"Q. Were those like carbon copy invoices?

"A. That's correct.

"Q. I'm sorry.  And who would you give your copy to?

"A. I would turn everything into the office at the end of the day.

"[¶] . . . [¶]

"Q. Now, when you were going through these invoices, did you see any other names of any other suppliers aside from Keenan?

"A. No.  I was in a hurry.  When you're working out in the field, you're in a hurry, you just sign it and give it back.  You look at the top of the load and you look at the big numbers, and that's it.  That's what you remember.  You don't look at the little.

"Q. Why is it that Keenan sticks out in your mind?

"A. Just the way the -- their K and stuff is all -- I don't know.  Maybe it's through the years, maybe it's worked into my head.  I don't know.

"Q. But as you sit here today, you can't recall the names of any other suppliers on any of those invoices that you reviewed at McKinleyville?

"[¶] . . . [¶]

"THE WITNESSS: That's correct."

## 2.  *Glamuzina's Testimony Was Based on Hearsay Evidence*

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."  (Evid. Code, § 1200, subd. (a).)[3]  Hearsay evidence is inadmissible, unless it falls under an exception.  (§ 1200, subd. (b).)  Invoices, bills, or receipts are inadmissible hearsay, unless offered for the limited purpose of corroborating a witness's testimony. (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 42–43 (*Pacific Gas & E.*); *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1267.)

---

[3] All undesignated statutory references are to the Evidence Code.

Here, there were no invoices or receipts showing Keenan supplied asbestos-cement pipe to the McKinleyville jobsite. Christeve wound up its business in 2001, and all of its documents were destroyed in 2002. Keenan either disposed of all its documents or transferred them to its successor in 1983. Its successor testified that if documents were transferred to it, they were destroyed. The document shown to Keenan's corporate representative was not an invoice from Keenan to Christeve.

Glamuzina's belief that Keenan supplied the asbestos-cement pipe was based on his review of invoices or delivery tickets. The wording on these invoices or delivery tickets were out-of-court statements offered to prove the truth of the matter asserted: namely, that Keenan supplied the pipes. The invoices described by Glamuzina were hearsay. (*Pacific Gas & E.*, *supra*, 69 Cal.2d at pp. 42–43.)

Furthermore, Glamuzina's testimony, standing alone, was insufficient to prove the pipe Glamuzina saw on the truckers' loads was asbestos-cement pipe supplied by Keenan. Glamuzina believed Keenan supplied the pipes based on his review of invoices or delivery tickets. Critically, he lacked personal knowledge of who the supplier was. His testimony was inadmissible for this reason. (§ 702 ["the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter."].)[4]

In finding otherwise, the trial court stated it did not consider "a logo, emblem, or similar designation of identity as testimonial hearsay; rather, it is circumstantial evidence of identi[t]y." The trial court made a similar point at the hearing on the motion in limine.

_____

[4] As we discuss *post*, neither is Glamuzina's oral testimony regarding Keenan's name or logo on invoices admissible under section 1523 because his testimony is based on hearsay. Our dissenting colleague argues Keenan did not object on the ground that Glamuzina lacked personal knowledge of the identity of the supplier. (Dis. opn., *post*, at p. 3.) But Keenan did object to Glamuzina's testimony on hearsay grounds, and Glamuzina lacked personal knowledge precisely because his belief regarding the identity of the supplier was based on words he said he read or saw on invoices or delivery tickets.

9

It stated: "This case is . . . about whether or not somebody can testify he saw a name, or I'll even use the word a 'brand' on a document and whether that's circumstantial evidence of that. [¶] I think that the testimony is not testimonial. It's not a matter that a hearsay rule would normally apply to and until the court of appeals addresses that, if I see a yellow cab, I will allow permission to say it's a Yellow Cab. [¶] If I have somebody come in and say I saw a hat that had a big letter on it, I will allow that testimony, and if someone comes in and says I saw a big K on it, I will permit that testimony. So [the motion in limine] is denied."

We are not persuaded by this analysis. Glamuzina also testified Johns-Manville manufactured the pipes based on his observation of a stamp on them, and there was no objection to this testimony. Here, we are not called upon to determine the proper basis for admitting testimony regarding a witness's observation of a company's name or logo on a product. Instead, we must determine whether a witness's testimony regarding what he saw on invoices was admissible. The information Glamuzina observed on invoices or delivery tickets was an out-of-court statement used to show Keenan supplied asbestos containing pipes; the statement was offered for the truth of that matter. (See *Pacific Gas & E.*, *supra*, 69 Cal.2d at p. 43 ["invoices, bills, and receipts . . . are hearsay"].) Thus, Glamuzina's testimony about the identity of the supplier of the pipe was based on hearsay. (*DiCola*, *supra*, 158 Cal.App.4th at p. 681 [determining package labeling reading "Burly Brands" and instruction sheet constitute hearsay when offered to prove the truth of the matter asserted, namely, that the box contained a "Burly Brands" product.].)

In arguing otherwise, the Harts rely on *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, but that case is inapposite. In *Jazayeri*, the court found altered copies of documents were not hearsay because they were not offered for the truth of the matter asserted. (*Id.* at p. 316.) Instead, the documents were offered "as the operative documents establishing

10

the fraud perpetuated on appellants." (*Ibid.*) But Glamuzina's testimony regarding Keenan invoices was offered for the truth of the matter asserted: namely, that Keenan supplied the pipes.

Nor are we persuaded by the Harts's reliance on *People v. Freeman* (1971) 20 Cal.App.3d 488 (*Freeman*). In *Freeman*, a witness for the prosecution testified she heard her daughter greet someone using the words, "Hi, Norman." (*Id.* at p. 492.) The court determined the testimony was not hearsay because it was "not offered to prove the statement's truth or falsity but as evidence of the fact that the statement was made." (*Ibid.*) The court reasoned the statement was circumstantial evidence of Norman Freeman's presence at a particular location at a time when he said he was elsewhere. (*Ibid.*) Citing Wigmore on Evidence, the *Freeman* court noted that " '[u]tterances serving to *identify* are admissible as any other circumstance of identification would be.' " (*Ibid.*)

Here, unlike in *Freeman*, we cannot disregard the truth or falsity of the out-of-court statements at issue. According to Glamuzina, the invoices contained the name of the vendor supplying the material and submitting the invoices for payment. Glamuzina's testimony regarding the content of the invoices was used to prove that Keenan was the vendor. Therefore, the content of the invoices was being offered for the truth of the matter asserted in them. (See *Osborne*, *supra*, 247 Cal.App.4th at pp. 52–53 [testimony regarding supplier of hay bales was properly excluded as hearsay because it was offered to prove the truth of the matter asserted].)

Among other decisions, the Harts cite *Brown-Forman Distillers Corp. v. Walkup Drayage & Warehouse Co.* (1945) 71 Cal.App.2d 795, 798, to support their contention that "California law routinely accepts . . . identifying information as circumstantial evidence of origin or identification." At oral argument, the Harts also relied on *People v. Williams* (1992) 3 Cal.App.4th 1535 (*Williams*), in which the court considered the

11

admissibility of a fishing license and two checks to prove the defendant resided in the apartment where the documents were found, and concluded that "regardless of the truth of any express or implied statement contained in those documents, they are circumstantial evidence that a person with the same name as the defendant resided in the apartment from which they were seized." (*Id.* at p. 1542.)

Here, unlike in *Williams*, the invoices themselves have been destroyed and the Harts did not offer any in evidence. Thus, we are not considering the admissibility of documents. We cannot disregard that Glamuzina's testimony was offered for the truth of the matter asserted in an out-of-court statement. When the statement of the supplier's name or identity appears in an invoice or on a delivery ticket, then it is an out-of-court statement. (*Pacific Gas & E.*, *supra*, 69 Cal.2d at pp. 42–43.) When the statement is used to prove the truth of the matter asserted, namely, that Keenan supplied pipes to the McKinleyville jobsite, then it is only admissible if it satisfies a hearsay exception.[5]

> 3.      *No Hearsay Exception Applies*

In denying Keenan's motion in limine, the trial court stated that if the invoice was hearsay, then "the invoice bearing the Keenan logo is a statement of a party (or a statement of one authorized by a party) and accordingly comes within an exception to the hearsay rule." On appeal, the Harts make the same argument. We disagree.

"Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity." (§ 1220.) In *People v. Lewis* (2008) 43 Cal.4th 415, our Supreme Court determined drawings found in the defendant's apartment were not

---

[5] Keenan refers to Glamuzina's testimony as "double hearsay." We disagree. Instead, Glamuzina's testimony was based on hearsay.

admissible as party admissions because there was no evidence the defendant drew them. (*Id.* at p. 498.)[6]

Similarly here, no copies of Keenan invoices or delivery tickets showing it supplied pipes to the McKinleyville jobsite were admitted into evidence, and Glamuzina worked for Christeve, not Keenan. At oral argument, the Harts acknowledged Glamuzina's testimony was offered against Keenan. "[I]n order to bring a statement or declaration within the operation of the rule contended for it must be shown that the statement or declaration was signed or made by the party against whose interest it is sought to have it apply; and that is not the situation here presented." (*Pansini v. Weber* (1942) 53 Cal.App.2d 1, 5.)

We respectfully disagree with the dissent's view that this hearsay exception applies because Keenan was the declarant. (Dis. opn., *post*, at pp. 1–2.) Keenan's corporate representative had no information regarding whether Keenan sold pipes used in McKinleyville, and the Harts did not produce any invoices showing it did. Instead, the Harts were forced to rely on the testimony of Glamuzina, an employee of Christeve. Thus, Glamuzina could not be a party-opponent. When ruling on the motion in limine, the court was considering the admissibility of this testimony, not the admissibility of a document. Without a document showing Keenan supplied the pipes to the McKinleyville jobsite, Glamuzina's testimony was not admissible as an admission by Keenan, and the Harts do not contend any other hearsay exception applies.

4. *Glamuzina's Testimony Is Not Admissible Under Evidence Code Section 1523 Because It Is Based on Hearsay*

In ruling on Keenan's motion in limine, the trial court noted "Keenan's records of invoices were apparently destroyed by its successor. See [section 1523, subdivision (b)]."

---

[6] Abrogated on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919–920.

13

But this Evidence Code provision does not provide a basis for admitting Glamuzina's testimony.

Oral testimony of the content of a writing is admissible "if the proponent does not have possession or control of a copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence." (§ 1523, subd. (b).) Here, Keenan's records were destroyed by it or its successor. For this reason, the Harts relied on Glamuzina's oral testimony to establish Keenan supplied the pipes in McKinleyville.

But, as explained by our Supreme Court, "[s]econdary evidence . . . must comply with the rules governing the admissibility of evidence generally, including . . . the hearsay rule . . . ." (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1070, fn. 2.) In other words, "[a] writing that passes muster under the secondary evidence rule is not necessarily admissible. The writing 'still may be inadmissible because of other exclusionary rules of evidence, such as hearsay . . . .' " (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 994–995.) As explained *ante*, Glamuzina's testimony was based on hearsay, and no hearsay exception applies. Hence, Glamuzina's oral testimony regarding the content of the invoices was not admissible under section 1523, subdivision (b).

### 5. *Glamuzina Could Not Authenticate the Keenan Invoices Because His Testimony Was Not Otherwise Admissible*

In overruling Keenan's motion in limine, the trial court's final point was that Glamuzina's testimony was sufficient to authenticate the Keenan invoices because it was his duty to check them, and his description was consistent with an exemplar of a Keenan invoice. On appeal, the Harts agree, pointing out that "the proponent of secondary evidence must still satisfy the threshold showing of authenticity."

A writing must be authenticated before it, or secondary evidence of its content, may be received in evidence. (§ 1401.) In addition, when the content of a writing is

14

proved by secondary evidence, authentication is required. (§ 1521, subd. (c).) But the secondary evidence must be "otherwise admissible." (§ 1521, subd. (a).) Here, as explained *ante*, Glamuzina's testimony regarding Keenan invoices was based on hearsay and no exception applies. This secondary evidence was not "otherwise admissible," so the question of whether the Keenan invoices were properly authenticated does not come into play.

Even if the authentication requirement did apply, Glamuzina could not authenticate the purported Keenan invoices. "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (§ 1400.) To introduce a writing, a proponent must establish that the writing is authentic, which usually means introducing evidence "that the writing was made or signed by its purported maker." (Cal. Law Revision Com. com., 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1400, p. 440; see *People v. Goldsmith* (2014) 59 Cal.4th 258, 266–267.)

"A writing may be authenticated by anyone who saw the writing made or executed, including a subscribing witness." (§ 1413.) The Evidence Code does not limit the means by which a writing may be authenticated. (§ 1410.) Nonetheless, courts do not assume "documents are what they purport to be . . . . Generally speaking, documents must be authenticated in some fashion before they are admissible in evidence." (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 525.)

Here, Glamuzina was a Christeve foreman, so, with regard to the purported Keenan invoices, he did not see "the writing made or executed . . . ." (§ 1413.) Keenan's corporate representative acknowledged Keenan sent its customers invoices, but he had "no information whatsoever that Keenan ever sold anything that was used in the McKinleyville work while Mr. Hart was working there." Christeve's bookkeeper did not

15

know if Keenan supplied asbestos-cement pipe to Christeve in McKinleyville. If the Harts were required to authenticate the purported Keenan invoices, then Glamuzina's testimony was insufficient to do so. (See *Osborne*, *supra*, 247 Cal.App.4th at p. 53 [refusing to admit the plaintiff's testimony about her observation of delivery tickets identifying a supplier in part because she "did not possess the physical document to which her testimony referred and no other witness . . . claimed to have seen it."].)

Because there was no reasonable basis for admitting Glamuzina's testimony regarding Keenan invoices, we conclude the trial court abused its discretion by doing so. The erroneous admission of this evidence was not harmless because there was no other evidence establishing Keenan supplied asbestos-cement pipe to the McKinleyville jobsite. Accordingly, we reverse the judgment against Keenan.

16

## DISPOSITION

The judgment against Keenan is reversed.  Keenan is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

_____

JONES, P.J.

I concur.

_____

BRUINIERS, J.

(A145125)

18

Dissent of Needham, J.,

The majority reverses the Harts' $1.6 million jury verdict against appellant Keenan Properties, Inc. (Keenan) on the ground that the trial judge abused his discretion in allowing jurors to hear sworn testimony that invoices accompanying asbestos-containing pipes bore the name "Keenan." I respectfully dissent.

At issue is the admissibility of John Glamuzina's testimony that the invoices and delivery tickets he personally observed had the name "Keenan" on them. The trial court's admission of the evidence is reviewed for an abuse of discretion. " 'Where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the correct result for the decision of the trial court.' [Citation.] We will only interfere with the lower court's judgment if appellant can show that *under the evidence offered,* ' *"no judge could reasonably have made the order that he did.*" ' [Citation.] [A] showing will be 'insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion." (*DiCola v. White Brothers Performance Products, Inc*. (2008) 158 Cal.App.4th 666, 679–680, italics added.)

### 1. Hearsay

Assuming that the out-of-court statement (pipe invoice with the name "Keenan") was offered for its truth (to prove the pipes were provided by Keenan), the statement is hearsay and the question is whether a hearsay exception applies.

Sufficient evidence supported the hearsay exception for a statement of a party-opponent. (Evid. Code, § 1220.) The evidence was that Keenan sent invoices to customers, those invoices bore a circled "K" logo, Glamuzina checked and signed invoices accompanying the asbestos-containing pipe, he observed "Keenan" on those invoices, and the word "Keenan" stuck in his mind because of the way the "K" was written. Upon this state of facts, it would be reasonable to conclude that it was Keenan

19

who authored invoices bearing the name "Keenan," so that Keenan would be paid for its pipes. Because it was reasonable to conclude that defendant Keenan was the declarant, the court did not abuse its discretion in ruling the statement admissible for the plaintiffs as the statement of a party-opponent. (See *Lannes v. CBS Corp.* (N.D.Cal. 2013) 2013 U.S. Dist. Lexis 191312, fn. 7 [mesothelioma plaintiff's testimony, that he saw the defendant's name on replacement sheet material and ordering guides for replacement parts that contained asbestos, was admissible because it pertained to an admission by a party-opponent under Fed. Rule Evid. 801(d)(2)]; *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.* (C.D.Cal. 2006) 454 F.Supp.2d 966, 974 ["Documents that bear [a party's] trade names, logos, and trademarks are statements by [that party] itself, and are admissible as admissions by a party-opponent under [Fed. Rule Evid. 801(d)(2)]"].)

The majority's reliance on *People v. Lewis* (2008) 43 Cal.4th 415 is misplaced. (Opn. 12.) In *Lewis*, the court determined that drawings found in a defendant's apartment were not admissible as party admissions because there was *no* evidence the defendant drew them and, in fact, the prosecutor's theory at trial was that someone *other* than the defendant had drawn them. (*Lewis,* at p. 498.) Here, by contrast, the plaintiffs contended that Keenan created the invoices, and there was at least some evidence to support that theory. After all, it would make no sense under the facts of this case for anyone other than Keenan to submit an invoice requiring payment to Keenan.

The majority also suggests that Glamuzina's testimony was not admissible as a party admission because Glamuzina did not work for Keenan. (Opn. at 12.) However, the question is whether the declarant – the one who made the invoice statement – was a party-opponent, not whether witness Glamuzina was a party-opponent. If defendant

20

Keenan was the declarant, the statement falls within the hearsay exception if offered by the plaintiffs, no matter what witness the plaintiffs used.[7]

---

[7]    The majority cites *DiCola, supra*, 158 Cal.App.4th 666 for the proposition that the testimony about the invoice bearing Keenan's name was hearsay.  *DiCola* specifically noted, however, that the appellants in that case had not argued any hearsay exception. (*Id*. at p. 681.)  Here, the Harts argue, and the court ruled, that a hearsay exception applied.

## 2. Personal Knowledge

The majority contends that Glamuzina lacked personal knowledge of the identity of the supplier. (Opn. 9.) Its position is unpersuasive. In the first place, appellant Keenan did not object on that ground. (Evid. Code, § 353.) Moreover, Glamuzina had personal knowledge of the facts *to which he testified* – that he personally saw invoices bearing Keenan's name. From this testimony, if believed by the jury, the jury could decide whether to infer that the pipe was indeed from Keenan.

## 3. Authentication

Although the invoices themselves were not admitted into evidence, the majority points out that they had to be authenticated for Glamuzina's secondary evidence to be admissible. (Opn. 14; see Evid. Code, § 1401.)

"Authentication of a writing means . . . the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is." (Evid. Code, § 1400.) The testimony of a subscribing witness is not required (Evid. Code, § 1411), and authentication may be established by circumstantial evidence and the document's contents (Evid. Code, § 1410; *People v. Skiles* (2011) 51 Cal.4th 1178, 1187).

Here, Glamuzina's testimony suggested that he saw "Keenan" with a distinctive "K" on the invoices, and Keenan's corporate representative admitted that Keenan sent its customers invoices with a distinctive "K." From this evidence, the jury *could* conclude that the invoices Glamuzina saw were, in fact, Keenan invoices, as Hart purported them to be. This met the threshold for authentication. (Evid. Code, § 403.)

The majority's reliance on *Osborne v. Todd Farm Services* (2016) 247 Cal.App.4th 43 is unavailing. There, it was ruled that a trial court had not abused its discretion in declining to admit the plaintiff's testimony that she saw delivery tickets

22

identifying the supplier of hay bales.  However, this was not merely because the plaintiff failed to offer the delivery tickets or a corroborating witness (as the majority notes), but also because the alleged source of the documents testified that no such receipt *ever existed*, he did not segregate hay in his barn by supplier, and he did not document the supplier of hay included in any delivery.  (*Id* at p. 53.)  Here, in stark contrast, Keenan admitted that it *did* invoice its customers with invoices.  Moreover, the fact the court in *Osborne* found that a trial court's ruling was within its discretion does not by any means establish that the court in this case exceeded its discretion.

In sum, appellant Keenan fails to show that the trial court abused its discretion in admitting Glamuzina's testimony.  Of course, it was up to the jury to decide whether to believe Glamuzina's testimony and trust his recollection of what he saw on the pipe invoices, and Keenan's lawyer was free to present evidence and argue that Glamuzina was incorrect.  But any doubts as to Glamuzina's recollection went to the weight of the evidence, *not* its admissibility.  (And as we now know, the jury accepted Glamuzina's testimony as true, rendering the reversal of the verdict all the more disturbing.)

NEEDHAM, J.

(A152692)

Filed 11/19/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FRANK C. HART et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>KEENAN PROPERTIES, INC.,<br>        Defendant and Appellant. | A152692<br><br>(Alameda County<br>Super. Ct. No. RG16838191)<br><br>**ORDER CERTIFYING OPINION<br> FOR PUBLICATION** |

**THE COURT:**

        The requests for publication, filed November 13, 2018 and November 15, 2018, are granted.  Pursuant to California Rules of Court, rule 8.1105(b), the opinion, filed on October 26, 2018, is ordered published.


Dated: _____                    _____, P. J.

1

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Winifred Y. Smith

Counsel:

Kazan, McClain, Satterley & Greenwood, Justin Alexander Bosl, Ted W. Pelletier, Michael T. Stewart for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet, Jason R. Litt; Hugo Parker, James Carl Parker for Defendant and Respondent.